## NELSON K. FARNHAM

*v.*

## HELEN M. FARNHAM.

1. DIVORCE — *degree of cruelty required.* Proof of two distinct acts of personal violence to the person of the wife by a husband, although no great physical injury was inflicted, will, under the statute, constitute technical cause for divorce; and abusive language and false charges of un-

73 497
28a 258

73 497
33a 225

73 497
138 444

73 497
59a 571

73 497
90a [3]404

73 497
95a [4] 53

73 497
192 [4]442

73 497
107a [1]144
107a [2]663

73 497
115a [1]345

chastity, made in the presence of others, may also be considered in connection, by the jury, as characterizing the physical acts of cruelty.

2. SAME—*effect of abusive language on relation.* While the statute has not made abusive language, and the application of coarse and vulgar epithets, a cause for divorce, yet such conduct on the part of a husband towards his wife, and charging her with a want of chastity, without cause, is sufficient to justify her in abandoning him, and in living separate and apart from him.

3. SAME—*condonation defined.* Condonation is forgiveness upon condition the injury shall not be repeated, and is dependent upon future good usage and conjugal kindness, and it must be free, and not obtained by force and violence.

4. SAME—*condonation, how avoided.* Condonation of personal acts of violence and cruelty may be avoided by abusive language and the use of opprobrious epithets. Cruel treatment does not always consist in actual violence, and a wife, having forgiven her husband's acts of physical cruelty, may, from the subsequent use of abusive and brutal language, and charges of infidelity, conclude that it will end, as on the prior occasion, in personal violence. In such case she is not bound to submit to actual violence as a condition to relief in a court of equity.

5. SAME—*condonation procured unfairly.* As fraud vitiates every transaction into which it enters, an act of condonation induced by false representations can be no more binding than any other contract obtained by fraud. If made upon assurances, a part of which the party making them admits were false, it will not be binding.

6. PRACTICE—*remarks of judge calculated to hasten a verdict.* Remarks by the court to a jury, after they have been out some time, touching the public necessity of juries agreeing, or other remarks calculated to hasten their verdict, however well meant, is a practice that can not be sanctioned, and is unwarranted by the law, and if made in a case at law where the facts are sharply contested, would vitiate the verdict.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a petition for a divorce, filed by Helen M. Farnham against Nelson K. Farnham. The material facts are stated in the opinion.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellant.

Messrs. BUELL & MEECH, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court :

The record does not show the overruling of any motion for change of venue. A petition for that purpose was filed and notice given of the intended application, but it does not appear the court took any action upon it. A motion was made in this court to continue the cause to enable appellant to apply to the court below to amend the record, so as to show the court in fact took action upon the petition, but that motion was denied, and hence there is nothing before us on the subject of the change of venue for consideration.

The bill in this case charges three distinct causes for divorce, viz: Adultery, habitual drunkenness for the period of two years, and extreme and repeated cruelty toward appellee. The jury found appellant guilty of extreme and repeated cruelty, but not guilty on the charges of adultery and drunkenness. Upon the coming in of the verdict, the court decreed a divorce on the ground of extreme and repeated cruelty.

Two distinct acts of physical violence to the person of appellee, are clearly proven. It is shown by testimony every way worthy of belief, outside that of appellee, that appellant, on two occasions, struck his wife in anger. This would constitute, under our statute, technical cause for divorce. No great physical injury was inflicted upon appellee on either occasion. But the jury could, very properly, consider the abusive language, which the evidence shows he applied to her, not only in their private room, but in the presence of strangers, as characterizing these acts of physical cruelty, and as giving to them a poignancy they would not otherwise have. It was proven he addressed her in the coarsest terms, language that implied a want of chastity. There is nothing that inflicts so deep and cruel a wound upon a pure wife as a false accusation of want of chastity, beside which the physical injuries proven in this case are as nothing. The law has made the one a cause of divorce, but not the other. It would be a reproach to our laws if it were not permissible for a wife to abandon a

husband who should continually, without just reason, reproach her with a want of virtue and fidelity to her marriage vows. Happily, the law will not require her to submit to any such degradation. While such conduct will constitute no grounds for divorce under out statute, it will justify her in living separate and apart from her husband, where such cruel accusations will add no more to her weight of sorrow.

Under the evidence in this case, the jury would have been fully warranted in finding appellant guilty of habitual drunkenness for a period of two years. There is some testimony, though slight, that tends to prove the charge of adultery. The facts proven would fully justify the decree of the court in granting the divorce, unless the acts of cruelty proven were subsequently condoned.

Condonation is defined in the books as forgiveness, upon condition the injury shall not be repeated, and is dependent upon future good usage and conjugal kindness. Bishop on Marriage and Divorce, sec. 370; *Davis* v. *Davis*, 19 Ill. 334. If it were not so, this whole doctrine would be a fatal snare to all who, with an honest purpose, endeavored to perform their marital obligations. It is said, "it must be free; for if obtained by force and violence, it is not binding, and if made upon express condition, the condition must be fulfilled." 2 Greenlf. Ev. sec. 53; *Gardner* v. *Gardner*, 2 Gray, 434; *Noges* v. *Noges*, 7 Tex. 538; *Threewits* v. *Threewits*, 4 Des. 560.

No acts of personal violence are proven subsequent to the alleged condonation, but there is evidence of abusive treatment, by the use of opprobrious epithets. On one occasion his treatment was so harsh, appellee was compelled to leave their room in the night time, and seek protection in the room of her mother. This ill usage itself would avoid the alleged condonation. Cruel treatment does not always consist of actual violence. There are words of false accusation, that inflict deeper anguish than physical injuries to the person—more enduring and lacerating to the wounded spirit of a gentle woman, than actual violence to the person, though severe. The facts proven in

this case constitute a clear breach of the condition of kind treatment implied in every act of condonation. Appellee could justly conclude, the abusive language would be followed, as on former occasions, with personal violence. It would be a harsh and unreasonable rule that would require her again to submit to actual violence, at the hands of one who had, impliedly at least, engaged to treat her kindly, as a condition precedent to any relief in a court of equity. Such is not the law.

But the condonation insisted upon was not fairly obtained. It was procured by unconscientious practices. Appellee was induced, by earnest protestations of affection on the part of appellant, to return to him the second time, under the belief he would treat her with that degree of conjugal kindness due from a husband to his wife. He now testifies the representations contained in his letters to appellee, and in the one written by Nellie Bagley in his interest, and with a knowledge of its contents, were deliberately untrue in some particulars, and made with a view to induce her to return to him. Fraud vitiates every act into which it enters. An act of condonation induced by false representations, can be no more binding than any contract obtained by fraud. It is appellant's own solemn admission, under oath, that the assurances, in part at least, which he made to appellee to induce her forgiveness of alleged past injuries, were, in fact, false, and known to be so at the time. They were effectual, however, to inspire a delusive hope there had been a permanent reformation in his character. Under the facts proven, there can be neither reason nor authority for holding the alleged condonation a bar to the relief sought. Appellant can not be permitted, in a court of conscience, to invoke, as an estoppel or otherwise, an act which he himself procured to be done under what he concedes to be an untruthful statement of facts. The case of *Threewits* v. *Threewits*, in some of its features, is not unlike the case we are considering. Its conclusions are founded in good sense. In that case, as well as in this, the element of good faith in the assurances of future good conduct was wanting.

Whether all the instructions given at the trial were critically

accurate, we have not deemed it necessary to inquire, in the view we have taken of the case. In the main they were correct, and such as the nature of the case required. But the evidence so abundantly sustains the decree, had the jury found appellant not guilty on all the charges, it would have been the imperative duty of the court to have awarded a new trial. Hence it can not be said appellant was in any manner prejudiced by the action of the court, in giving or refusing instructions. The jury would not have been justified in returning a verdict of not guilty on all the charges, and any instruction that would have warranted such a conclusion would have been vicious.

In the absence of the parties and their counsel, the jury was brought to the bar of the court at about noon, after having been out all the previous night considering of their verdict, when the court addressed to them some remarks touching the public necessity of juries agreeing upon verdicts. The judge did not reduce his remarks to writing, so we are not permitted to know precisely what he really did say; but enough appears in the record to show the court addressed to the jury some remarks, calculated in their nature to hasten the verdict. This practice can not be approved, however well it may have been intended, and we are unwilling to give it the slightest sanction. It is a practice not warranted by the statute, and is liable to great abuse. Had this been a common law action, and the facts sharply contested, we should regard the error as of sufficient gravity to vitiate the verdict. A verdict hastened by the action of the court, however worthy the motive, can not be the deliberate judgment of the several jurors. The juror, as well as the court, has his independent functions to perform, and he ought to be left perfectly free to pronounce his own conscientious convictions.

We concur with the court below in the opinion the verdict in this case is authorized by the evidence, and whether the jury were hastened in their action or not, their conclusion is manifestly just. Hence, the action of the court, whether right or wrong, worked no injury to appellant.

No error appearing that can in any manner affect the merits of the case, the decree must be affirmed.

*Decree affirmed.*

WALKER, C. J.: I concur in the conclusion announced in this case, but not in much of the reasoning and some of the grounds upon which it is based, as stated in the opinion.