Schoop v. Schoop.

### John Schoop v. Lizzie Schoop.

#### Gen. No. 4,857.

1.   LIVING SEPARATE AND APART—*when wife justified in.*   A wife is justified in leaving her husband and living separate and apart from him where it appears that he called her vile names, accused her of unchastity, by his conduct aggravated her physical affliction, and in other ways abused her and rendered her life miserable.

2.   FINDINGS OF FACT—*when, will not be reversed.*   Findings of a chancellor as to matters of fact will not be reversed by an appellate tribunal, unless they are clearly and manifestly against the evidence.

3.   CUSTODY OF CHILDREN—*to whom awarded.*   Where the children of a marriage are extremely young, it is, ordinarily, proper upon awarding separate maintenance, to give them into the custody of their mother.

Proceeding for separate maintenance. Appeal from the Circuit Court of Will County; the Hon. CHARLES B. GARNSEY, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

BARR, BARR & BARR, for appellant.

J. L. O'DONNELL, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Appellee, complainant below, filed her bill for separate maintenance in the Circuit Court of Will county against defendant, her husband, appellant here. The bill in substance charges that defendant about a year after their marriage began to use violent, abusive, insulting and obscene language toward complainant; that he had a violent temper, and would frequently use such language in the presence of their young children; that for several years before she left him, her husband called her vile and vulgar names, and repeatedly accused her of being a lewd and unchaste woman, among other things of sustaining criminal relations with her own father. The bill alleges that she became ill, and her health so feeble that her husband's conduct was unendurable and that to save her life and restore her health, she felt compelled to and did leave him. She also prayed an injunction, which was ordered issued by the master in chancery. Defendant answered, denying the material allegations of the bill. Complainant then filed a motion and petition for alimony *pendente lite,* and an order was made requiring defendant to pay complainant $10 per month and a solicitor's fee of $25. At the May term, 1903, the cause was tried by the court and a decree granted complainant, finding that she was living separate and apart from her husband without her fault, and directing defendant to pay her for her separate maintenance $10 per month theretofore allowed as alimony *pendente lite,* from the date of the last payment to November 1, 1903, and that after November 1, 1903, he pay her $20 per month; also that he pay her solicitor's fees of $50, and that she have the custody of the

children.  By the terms of the decree, the court reserved the right to change or modify it in future as circumstances might require, and retained the case in court for that purpose.

Two grounds for reversal are urged: first, that the evidence was insufficient; second, that the amount allowed complainant is excessive.  We have read the evidence from the abstract, and while it is very conflicting, cannot say that it was insufficient to support the decree.  Certainly, complainant's testimony made a case justifying her in living separate and apart from her husband.  She was the mother, by defendant, of two children, the older being six years of age and the other about seventeen months younger.  For some time prior to their final separation complainant was afflicted with exophthalmic goitre which greatly weakened and enfeebled her, affecting seriously the action of her heart, and caused her to become highly nervous.  Her husband made little or no objection to her being treated by a local physician but opposed her consulting an eminent physician in Chicago, whom she wanted to see, and she claims opposed her going to a hospital for treatment and rest, as she was advised to do by physicians.  For several months prior to the separation her physical condition, according to the medical testimony, was such that she needed perfect quiet and rest.  She testified that during this period as well as for some years prior thereto, her husband accused her of criminal intimacy with other men, one of them being her own father, called her vulgar and vile names and abused her in loud and vulgar tones and greatly aggravated the nervous and distressed condition resulting from the disease with which she was afflicted.  According to her testimony, before the second child was born he denied being its father and told her it was the child of his hired man.  This is only a part of the damaging things to be found in complainant's testimony, but surely it is enough to show that if true, she was fully justified in refusing to live with her husband.  Farnham v. Farnham, 73 Ill. 497.

Defendant denied in positive terms using any such lan-

guage or being guilty of any such treatment toward his
wife, or giving her any cause to live separate and apart
from him. Complainant introduced some witnesses whose
testimony tended to corroborate hers, in some respects, but
none of them heard defendant use any of the language testi-
fied to by her. Complainant testified that he never abused
her in the presence of any one except the little children,
and usually at night. Defendant introduced three men
who had each worked for him several months and lived in
his house during their employment, who testified they
never saw him mistreat his wife, nor heard him abuse her.
We have not undertaken to give the details of the testi-
mony but only to refer to its most important features.

Under this state of the case it was for the court who saw
and heard the witnesses to determine whose testimony was
entitled to the greater weight and credit. If he believed
the story of complainant then no other decree could have
been entered. No one would say that a respectable and
virtuous woman should be required to live with a man who
was so lost to all sense of duty and decency as to indulge
in such treatment and language toward her as is testified
to by complainant. The fact that the evidence is in irrecon-
cilable conflict would not authorize us to disturb the decree.
We would only be justified in reversing on that ground
where the "findings are clearly and manifestly against the
preponderance of the evidence." Burgett v. Osborne, 172
Ill. 227, and cases there cited. From a careful reading of
defendant's evidence we are not surprised that the court
should have given greater weight to that of complainant.
There are circumstances in connection with defendant's
testimony, and we would especially note the fact of his
more than once while on the witness stand, in express lan-
guage calling his wife a liar, that do not commend his tem-
per and disposition. It was entirely proper, on account of
the ages of the children, if for no other reason, that the
court should have awarded their custody to complainant,
and in view of that fact and the amount of property defend-
ant owns, we do not think the amount required by the de-

cree to be paid by defendant is unreasonable or excessive. Should subsequent circumstances require or justify a modification of the decree, the court is open for that purpose.

The decree is affirmed.

*Affirmed.*