(No. 17605.—Reversed and remanded.)
WILEY M. TEAL, Plaintiff in Error, *vs.* ELIZABETH W. TEAL, Defendant in Error.

*Opinion filed December 23, 1926—Rehearing denied Feb. 2, 1927.*

1. DIVORCE—*verdict of jury in divorce case is sufficient to support decree for complainant.* The rule which requires a party in whose favor a decree granting relief is entered to support it by a certificate of evidence or by the facts recited in the decree does not apply to divorce cases which are tried by jury, as in such cases the presumption is in favor of the verdict, which is binding on the court and can be set aside only in accordance with the practice in cases at common law.

2. SAME—*ability to escape injury is not material on question of cruelty.* In a suit by the husband for divorce on the ground of extreme and repeated cruelty, where repeated assaults are shown to have occurred and the wife's conduct is shown to be such as to make it probable that the assaults will continue, the question of the strength of the husband and his ability by constant vigilance and agility to escape injury is not material.

3. Same—*threats are admissible on issue of extreme and repeated cruelty.* While mere threats and words cannot amount to extreme and repeated cruelty, they are admissible in evidence and characterize the conduct of the person using them.

4. Same—*what constitutes extreme cruelty.* "Extreme cruelty," as used in the statute, ordinarily means acts of physical violence producing bodily harm, but in determining what acts of violence constitute such cruelty each case must be considered upon its own facts, taking into consideration the conduct of the parties before and at the time, the provocation, if any, the physical and mental condition of the parties, their constitutions and temperaments, and all the circumstances relating to the acts at the times of their commission.

5. Same—*degree of proof required where the husband sues for divorce on the ground of cruelty—instruction.* While it must be a clear case which will induce the court to grant a divorce on the application of the husband for the cruelty of the wife, this merely means that the relative rights which the marriage has created and the physical condition and temperaments of the parties must be considered, and it does not mean that any different principles of law or rules of evidence apply in such case; and it is not error to instruct the jury that they should not be influenced against either of the parties solely on account of difference in sex.

6. Same—*condonation is upon condition that injury shall not be repeated.* In cases of condonation there is an express or implied agreement that the party who forgives the other does so only on the condition that the party forgiven will not repeat the offense but will perform all marital duties the relation imposes.

7. Same—*what will constitute repeated cruelty—instruction.* Whether two or more acts of violence will constitute repeated cruelty depends on the character of the violence, the manner of the person committing it and all the circumstances attending the acts, and it is not error to instruct the jury that if the defendant committed two or more assaults upon the complainant within five years before the filing of the bill with intent to do bodily injury, and did do bodily injury, the defendant would be guilty of extreme and repeated cruelty within the meaning of the term as properly defined in the instructions.

8. Same—*when an instruction as to revival of offenses prior to condonation is erroneous.* An instruction which, without referring to any definition of extreme and repeated cruelty, states that if the jury believe that after condonation the defendant was guilty of physical violence toward the complainant without any sufficient justification therefor the repetition of other acts of violence would

revive the prior offenses is erroneous, because mere physical acts of violence do not necessarily amount to cruelty, and whether they do so depends on the character of the violence, the manner of the person committing it and all the circumstances attending the acts.

9. SAME—*cohabitation is merely evidence of condonation—instruction.* Cohabitation is merely evidence of condonation, and in a suit for divorce on the ground of extreme and repeated cruelty, where the defendant claims condonation and alleges acts of sexual intercourse with complainant, it is error to instruct the jury that the burden is on the defendant to prove sexual intercourse and that unless she makes such proof they shall find against her on that issue, as such instruction makes the condonation depend entirely upon the act of intercourse.

10. SAME—*instructions may direct verdict without referring to defense of condonation.* In a suit for divorce on the ground of extreme and repeated cruelty, instructions may direct a verdict by reference only to the issue of extreme and repeated cruelty, without referring to the defense of condonation set up by the defendant.

11. SAME—*evidence of cruelty by complainant is admissible—insanity.* In a suit for divorce on the ground of extreme and repeated cruelty, evidence of cruelty on the part of the complainant is admissible by way of recrimination, and it is proper to show the complainant's attitude or relation toward an insanity proceeding which had been instituted against the defendant prior to the divorce case.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

HERRICK & HERRICK, for plaintiff in error.

L. O. WILLIAMS, and F. K. LEMON, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Wiley M. Teal brought a suit in the circuit court of DeWitt county against his wife, Elizabeth, for a divorce on the ground of extreme and repeated cruelty. She filed an answer denying the charges of the bill and a plea alleg-

324—14

ing condonation. These issues were submitted to the jury, which returned a verdict in favor of the complainant, and the court entered a decree granting the divorce, from which the defendant appealed to the Appellate Court for the Third District. That court reversed the decree without remanding the cause, and upon the application of the complainant a writ of *certiorari* was awarded and the record has been brought before us for review.

The parties were married in 1910 and have one child, a boy, born on January 3, 1913. The complainant at the time of the trial, in December, 1924, was sixty-five years old and weighed 220 pounds. He suffered from varicose veins and was slow of motion. The defendant was sixteen years younger, and in 1914, when the first trouble revealed by the evidence arose, weighed 135 pounds. For much of the time since, however, she has not been well and at the time of the trial weighed 118 pounds. At the time of the marriage she had a sore foot, upon which several operations were performed, resulting in the removal of two toes and some ligaments thereafter. She also suffered from a goitre, which was removed by an operation. The last operation was in February, 1920. She was quick in her motions, and the evidence indicates that she was also quick in her temper and with her tongue. The bill alleged, generally, extreme and repeated cruelty, and specified in particular that the defendant on numerous occasions used personal violence against the complainant by striking, kicking and scratching him; that she jabbed him in the face with the brush end of the broom and punched him in the body with the handle; that she threw sticks of wood, rocks, brickbats, a claw-hammer and a hatchet at him, spit in his face and on his person, called him vile names and used obscene and profane language. It alleged that he had varicose veins, which caused sores on his legs, and that she kicked him on the legs and on the veins and sores, causing him great pain and causing the blood to run down his

legs into his shoes; that she drew the butcher knife on him, threatening to run him through; that she threw boiling water on his legs, scalding his legs and one of his feet; that she struck him a severe blow on the back of the neck on an unhealed wound caused by an operation for the removal of an ulcer. The complainant's testimony fully sustained the charges made in his bill. He was corroborated as to most of his testimony by the twelve-year-old son and as to many details by other witnesses. The defendant denied every charge in the bill generally and in detail. Her reputation for truth and veracity was attacked by the testimony of thirteen witnesses, who testified that such reputation was bad. It is unnecessary to set forth in detail the testimony. It is sufficient to say that there was evidence on the part of the complainant to sustain the charges of his bill and that the testimony of the defendant fully denied the charges. The issues were submitted to a jury, and their verdict in favor of the complainant is final unless manifestly against the weight of the evidence or unless prejudicial error occurred on the trial.

Although the proceedings in a divorce case are in chancery, yet the rule which requires a party in whose favor a decree granting the relief is entered to support it by a certificate of evidence or by the facts recited in the decree does not apply to divorce cases, where the parties are entitled to a trial by jury. In such cases, tried by a jury, the presumption is in favor of the verdict, which is binding on the court and can be set aside only in accordance with the practice in cases at common law. *Berg* v. *Berg,* 223 Ill. 209; *Lewis* v. *Rose,* 82 id. 574; *Becker* v. *Becker,* 79 id. 532; *Thatcher* v. *Thatcher,* 17 id. 66; *Lenning* v. *Lenning,* 176 id. 180.

The appellant in the Appellate Court assigned error on the overruling of her motion for a new trial, and it is argued here that the decree was properly reversed, both because it was contrary to the weight of the evidence and

because of error occurring on the trial. It is argued that "the charge here attempted to be shown by the evidence is that this weak, sickly, lame, emaciated woman, of the weight of a school girl, in fights and combats so worsted and whipped the plaintiff in error that she is guilty of extreme and repeated cruelty," and that such charge is ridiculous. This is not a correct statement of the issue. The question is not whether the defendant in error worsted and whipped her husband or whether he could or should have worsted and whipped her, but whether the violent physical assaults which by the verdict were found to have been made by her on him were of such a character as to come within the legal definition of excessive cruelty. If excessive cruelty is shown the evidence leaves no doubt that it was repeated.

Counsel for the defendant in error state in their brief as a rule of law that if the husband could have protected himself by the exercise of his marital powers or physical strength no divorce can be granted. There is no such rule of law. On the contrary, it has been expressly announced that he may not achieve domestic tranquility by exchanging blow for blow. (*Garrett v. Garrett*, 252 Ill. 318.) It has been said that "it is not sufficient to show slight acts of violence on her part towards him so long as there is no reason to suppose that he will not be able to protect himself by a proper exercise of his marital powers." (*Aurand v. Aurand*, 157 Ill. 321; *Duberstein v. Duberstein*, 171 id. 133.) We know of no definition of marital powers applicable to this situation. The authority of the husband to use force in enforcing marital peace and conjugal tranquility by domestic chastisement, if it ever existed, at this day has become obsolete, and the wife is accorded equal authority with the husband in most of the affairs which concern the conjugal relation. Perhaps legally he can fix and change the family residence, his authority over the children may be entitled to first recognition and by his will he can nomi-

nate a guardian for them, but husband and wife are equally liable to creditors for the family expenses, though as between themselves he is ordinarily bound to support the family. She may recover alimony from him in case of a divorce, and it has never been determined in Illinois whether he can recover alimony from her. He has no marital authority by which he can protect himself against her acts of violence. The only protection within his power, if she throws brickbats, rocks, stove-wood, hammers and hatchets at him, is physical strength and his ability to dodge. If she has attacked him a dozen times with missiles of this character and made other assaults upon him, the fact that he has been able to avoid physical injury in most cases does not relieve her of the charge of extreme cruelty if she has been able to hit him and cause physical pain once, or upon the charge of repeated cruelty if she has been able to do so two or three times. Where such assaults have occurred and her conduct has been such as to make it probable that they will be renewed, the matter of the strength of the husband and his ability by constant vigilance and agility to escape injury is not material on the question of cruelty.

In addition to the acts of violence which have been mentioned there was evidence of threats of violence and physical injury to the plaintiff in error and the use of profane and obscene language. While mere threats and words cannot amount to extreme and repeated cruelty, they are admissible in evidence and characterize the conduct of the person using them. It is said in *Ward* v. *Ward*, 103 Ill. 477, that "it is difficult to define with precision what is and what is not extreme and repeated cruelty. The same act is not the same thing under all circumstances and to all persons. Necessarily, each case must to a large degree be judged by itself." In the opinion in that case Mr. Justice Scholfield quoted from *Poor* v. *Poor*, 8 N. H. 307: "In the judgment of law any willful misconduct of the husband which endangers the life or health of the wife,

which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe, is extreme cruelty, and in order to amount to such cruelty it is not necessary that there should be many acts. Whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife can hardly be considered safe." This statement concerned the misconduct of the husband toward the wife and had no reference to the repetition of such misconduct, which is required by our statute. Extreme cruelty as used in the statute has been often construed, and means acts of physical violence producing bodily harm,—such acts as put the person against whom they are exercised in personal danger and endanger life or limb. Slight acts of violence by the wife against the husband do not constitute extreme cruelty so long as there is no reason to suppose that he cannot by a reasonable exercise of physical power protect himself and prevent their repetition. With these rules in mind, each case must be considered upon its own facts, taking into consideration the conduct of the parties before and at the time, the provocation, if any, the physical and mental condition of the parties, their constitutions and temperaments, and all the circumstances relating to the acts at the time of their commission. (*Garrett* v. *Garrett, supra; Trenchard* v. *Trenchard,* 245 Ill. 313; *Fritz* v. *Fritz,* 138 id. 436; *De La Hay* v. *De La Hay,* 21 id. 252.) It has been said many times that it must be a clear case which will induce the court to grant a divorce on the application of the husband for the cruelty of the wife, but this does not mean that any different principles of law or rules of evidence apply in cases where the husband is complainant from cases where the wife is complainant. It merely means that in the application of these principles it is necessary to consider the relative rights which marriage has created and the physical conditions and temperaments of the parties. (*Garrett* v. *Garrett, supra.*) The degree of proof required

is the same as in all other cases of a civil nature,—by the preponderance of the evidence. *Lenning* v. *Lenning, supra.*

The evidence on the defendant in error's plea of condonation is that on January 23, 1920, the plaintiff in error went away from the home in which they were living, in DeWitt county, to Peoria, where he remained for two or three months. At the expiration of this time the defendant in error, with their son, came to Peoria and the plaintiff in error returned with her to their home and continued to live with her until the day before the filing of this bill. In cases of condonation there is an express or implied agreement that the party who forgives the other does so only on the condition that the party forgiven will not repeat the offense but will perform all marital duties the relation imposes. (*Kennedy* v. *Kennedy*, 87 Ill. 250.) If the plaintiff in error's return to his home and continuing to live there in the family relation with the defendant in error was a condonation of all previous offenses it was subject to the implied condition that the offenses would not be repeated. According to the testimony of the plaintiff in error the conduct of the defendant in error after his return was of the same character as it had been before, and she continued the acts of physical violence of which she had previously been guilty, in the same manner as before. On February 10, 1925, before the filing of the present bill, he filed a bill for divorce against her and procured an injunction restraining her from going upon the farm which had been their residence, but she afterward returned to the farm with his consent and lived there in the same house with him until he left, on May 1. They occupied separate bed-rooms, and he testified substantially that their relation was not marital but that they merely occupied separate rooms in the same house, while she testified to a renewal of their family relation and to the occurrence of acts of sexual intercourse between them. This bill was pending at the time of the beginning of the present suit and afterward

until May 14, when it was dismissed. The plaintiff in error testified to acts of the defendant in error of physical violence and cruelty on April 28 and April 30, immediately before his departure on May 1, and if the jury believed his testimony, the condonation, if any, was avoided and the previous offenses revived by her violation of the implied condition against a repetition of the offenses. The defendant in error testified that after the plaintiff in error left home on May 1, and after the filing of the bill, he returned to the house and had sexual intercourse with her on two occasions,—the first on Friday, July 18, when she recorded the date on a slip of paper and also marked it on a calendar, and the second in the next week in July, or at some later date which she did not remember. The plaintiff in error denied these acts, and his testimony was corroborated by the testimony of other witnesses to circumstances inconsistent with the occurrences testified to by the defendant in error.

It was clearly impossible for the court to say, as a matter of law, that the acts of violence did not constitute extreme and repeated cruelty, or that the husband could have avoided their effect or could avoid the effect of like acts merely by the proper exercise of his marital powers, or that the plea of condonation was established. The evidence was in irreconcilable conflict. It was the province of the jury to determine its weight. The court therefore did not err in denying the motion of the defendant in error to instruct the jury to return a verdict in her favor. Nor could the court say that the verdict was manifestly against the weight of the evidence. Therefore the Appellate Court could not reverse the decree on that ground, and unless other error occurred on the trial the verdict should be affirmed.

It is contended that the complainant's instruction No. 4 was erroneous. It told the jury that if they believed, from a preponderance of the evidence, that the defendant, within five years before the filing of the bill, committed two or

more assaults on the complainant with intent to do him
bodily injury, and that she did on such occasions inflict
bodily injury on the complainant, the defendant would be
guilty of extreme and repeated cruelty within the meaning
of the term as used in the instructions.  The case of *Len-
ning* v. *Lenning, supra,* is cited in support of this objec-
tion, but the instruction in that case defined extreme and
repeated cruelty as two or more acts of physical violence to
the person, leaving out the elements of intent to inflict bod-
ily injury and a bodily injury actually inflicted, which were
included in the instruction in this case.  It was said that
it depends on the character of the violence, the manner of
the person committing it, and all the circumstances attend-
ing the acts, whether two or more acts of violence to a
person constitute cruelty or not.  The instruction is not
subject to the criticism urged against it.

The sixth instruction informed the jury that in deter-
mining the question whether the defendant has been guilty
of extreme and repeated cruelty the jury should not be in-
fluenced in their judgment by any considerations other than
such as bear directly on this question; that the jury have
nothing to do with any question affecting the rights of the
parties to property or their future means or manner of sup-
port.  It is argued that this excludes from the considera-
tion of the jury the question of condonation, and that the
jury had the right to consider the two questions together,
and if the jury believed that the cruelty was condoned
they would have answered both questions in the negative.
This criticism is without foundation.  The two issues were
separate.  If the jury found for the defendant on the issue
of cruelty there was no question of condonation to be con-
sidered, but if they found for the complainant the deter-
mination of the question of condonation was necessary.  It
was not error to give this instruction.

The seventh instruction told the jury that they should
not be influenced against either of the parties solely on ac-

count of difference in sex, and it is contended that on the
question of divorce for extreme and repeated cruelty there
is a great difference whether the injured party is a man or
woman, and the difference is in favor of the woman.    It
has already been said that the general principles of law
are the same whether the suit be instituted by the husband
or wife but that in the application of these principles it is
necessary to consider the relative rights which the marriage
has created and the physical constitutions and temperaments
of the parties, and that mere violence of the wife from
which the husband can easily protect himself is not cruelty;
but this distinction arises not from the difference in sex
but from the difference of strength, physical constitution,
temperament and rights, and it was therefore not errone-
ous to instruct the jury that they should not be influenced
against either of the parties solely on account of difference
in sex.

Objection is made to instructions Nos. 10 and 11, which
were on the subject of circumstantial evidence. . It is said
that all of the acts complained of by the plaintiff in error
were testified to directly by himself and denied by the de-
fendant in error; that the instructions themselves are sub-
tantially correct as abstract principles of law but have no
application to the case because there were no facts estab-
lished by circumstantial evidence.    While it is true there
was direct evidence in regard to all the acts of cruelty com-
plained of, there were many circumstances introduced in
evidence tending to show the feeling and intent of defend-
ant toward her husband, and there was evidence of many
bricks and other· missiles thrown at her husband without hit-
ting him, and these acts were not acts of extreme cruelty
because they did not inflict bodily injury; but if they actu-
ally happened as testified to they constituted circumstances
tending strongly to characterize and explain the conduct of
the defendant toward her husband and to corroborate his

evidence as to the character of the acts. There was no error in giving these instructions.

The twelfth and thirteenth instructions are on the subject of condonation, with particular reference to the effect of subsequent acts of extreme and repeated cruelty committed after such condonation to revive the acts committed before condonation. The twelfth instruction refers to such acts of extreme and repeated cruelty "as defined in these instructions," which words refer to instruction No. 4,—the only instruction purporting to define extreme and repeated cruelty. We have held that instruction No. 4 was a correct statement of the law. Instruction No. 13, instead of referring to the definition of extreme and repeated cruelty as defined in instruction No. 4, states that if the jury believe that after the condonation the defendant was guilty of physical violence toward the complainant without any sufficient justification therefor, the repetition of other acts of violence by the defendant against the complainant would revive the former or earlier acts of violence. This instruction was erroneous, because mere acts of physical violence do not necessarily amount to cruelty, and whether they do so or not depends upon the character of the violence, the manner of the person committing it and all the circumstances attending the acts.

The fifteenth instruction told the jury that if the defendant committed the acts of extreme and repeated cruelty complained of in the bill, then, unless the jury believed from the evidence that the complainant forgave and condoned such acts, the answer to the second interrogatory must be no. This instruction was erroneous, for it permitted the jury to determine which of the acts complained of constituted extreme and repeated cruelty. There were many allegations in the bill setting forth facts which the jury might have supposed constituted extreme and repeated cruelty,—threats of the defendant to run the complainant through with a knife, throwing missiles at him, and other

things which would not constitute extreme cruelty within the meaning of the statute but which might be regarded by the jury in that light.

The seventeenth instruction was erroneous. It was as follows: .

"The court instructs the jury that one of the defenses interposed here by the defendant is, that the complainant had sexual intercourse with her on the 18th day of July, A. D. 1924, and on another occasion later in the month of July or August, 1924. The court instructs the jury that the burden is upon the defendant to prove by the preponderance of the evidence in support of that alleged defense that the complainant did have sexual relations and intercourse with her on one of the two of said occasions, and unless . she has made such proof then it would be the duty of the jury to find against the defendant on that issue."

This instruction, while it did not use the word "condonation," had reference to that defense, and by the language of the first sentence, calling attention to a single specific item of evidence on that question, was likely to lead the jury to regard the defense as depending entirely upon the act of sexual intercourse. Condonation is forgiveness upon condition that the injury shall not be repeated. (*Farnham* v. *Farnham,* 73 Ill. 497; *Sharp* v. *Sharp,* 116 id. 509; *Brown* v. *Brown,* 265 id. 546.) It depends upon the intention of the injured person to forgive the offender, to overlook the wrong and to continue or renew the conjugal relation. Cohabitation,—the living together as husband and wife,—is evidence of condonation, and while the burden of proof was on the defendant to prove condonation, it was erroneous to instruct the jury that the burden was on her to prove the complainant had sexual intercourse with her.

It is insisted that the second and third instructions for the complainant are erroneous because they direct a verdict and ignore the issue of condonation. These two instructions only relate to the issue of extreme and repeated

cruelty and direct a verdict only as to that issue, leaving the issue of condonation to be considered separately, and this was proper.

It is urged that the court erred in declining to admit evidence of an inquest in the county court of DeWitt county as to the sanity of Mrs. Teal. The inquest was instituted by Fred Holt, who was a brother of Mrs. Teal. It was contested and tried before a jury, which returned a verdict February 10, 1925, finding that she was not insane. On the same day a bill for divorce was filed by her husband against her and the summons was served on her. For the purpose of showing a conspiracy between the plaintiff in error and Holt to get rid of her, she offered to show that the plaintiff in error was the moving cause of the insanity proceeding; that he employed special counsel to draw the petition alleging her to be insane and to assist the State's attorney in the trial; that he asked Holt to file the petition, promising that if she were declared insane he would let Holt and his wife move into the house and farm the place, and that he testified on the trial that she was insane. The plaintiff in error employed Holt on his farm against the wishes of the defendant in error and in spite of her repeated request to discharge him. She testified to a quarrel between Holt and herself in August, 1923, which culminated in his striking her on the head with a bucket, and that this occurred in the presence of the plaintiff in error, who did not interfere to prevent injury to his wife by Holt. There is also testimony tending to show that the plaintiff in error treated his wife roughly, frequently striking her; that at one time he shoved her as she was going down the basement steps and she caught her heel on a step and fell to her knees; that he once held her arms so tightly that his finger nails cut her and black-and-blue marks were made, and at times he cursed her. All the evidence was admissible by way of recrimination. It was proper to show the action of the parties toward each other by evidence of their acts, and

the evidence of the plaintiff in error's relation to the insanity proceeding should have been admitted. The entire relationship of the parties is material to characterize or explain their actions.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court for a new trial.

*Reversed and remanded.*