(No. 23194.—■■■■■■■■■)

HAZEL MOORE, Appellee, *vs.* LLOYD C. MOORE, Appellant.

*Opinion filed December 19, 1935.*

HARRY F. JOHNSON, ALFRED S. PFAFF, and WM. A. MILLER, for appellant.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause comes on direct appeal from the circuit court of Jefferson county to review a decree of that court divorcing appellee from appellant and decreeing title to certain real and personal property.

Appellee's bill alleges the marriage of the parties and the birth of four children, and complains that appellant for more than two years, without provocation, accused her of

immoral conduct with divers men, greatly distressing her and rendering her a nervous wreck, necessitating an operation on November 18, 1934; that on numerous occasions appellant assaulted appellee, striking, choking and beating her, twisting her arms and otherwise mistreating her; that on November 25, 1934, appellant stood by and saw their son throw her violently to the floor, and when she called upon him for protection he twisted her arms, causing her great suffering, and that again, on December 1, 1934, he assaulted her. The bill also alleges that since October 1, 1934, appellee has not lived or cohabited with appellant. The prayer of the bill was for divorce, and that appellant be enjoined from selling or incumbering his property or from molesting or assaulting appellee or otherwise interfering with her or their children. Appellant's answer admits the marriage and birth of the children and denied all other allegations of the bill. He filed a cross-bill praying for divorce.

In support of her charges of cruelty, appellee testified that on one occasion she and her husband came home together and her mother handed her a letter from her sister; that she immediately went to the bath-room and locked the door; that after reading the letter she pinned it inside her dress; that as she opened the door appellant grabbed her and tried to make her tell what was in the letter; that he pushed her about in the bath-room until she told him she tore it up and flushed it in the toilet and he then ceased, and that in pushing her around her ankle struck the bath-tub and was injured. She testified that on another occasion she was searching her husband's clothing for her watch, which she suspected he had taken, when he jumped out of bed and grabbed her; that she ran, and he threw her across a chair and stepped on her foot, and that she reached down to rub her foot, picked up her shoe and hit him with it. As to these alleged acts of cruelty the record contains no corroboration of her testimony. On cross-

examination she admitted using vile language to appellant, but asserted that she had not done so as often as she should. She testified that at another time, while engaged in an altercation with their son Verl, a boy of sixteen, the latter pushed her down and swore at her and that she hit him with a hairbrush, and at that time appellant seized her hands and was twisting her arms, and that she told him if he did not let her go she would kick him, and he released her. Her son Verl testified concerning the matter that his mother had struck him with a hairbrush and that he pushed her down; that appellant came in and ordered him to bed and that he went, but that appellant did not seize appellee nor twist her arms.

Numerous witnesses testified for appellee that the parties quarrelled at times, but none of them testified to seeing any acts of cruelty on the part of appellant. Most of them testified that appellant was jealous and suspicious of his wife's conduct and relations with other men. Witnesses for appellant testified that both the parties "fussed" a good deal, but that otherwise appellant treated his wife as a husband should; that he provided a home and food for her, furnished an automobile and paid her doctor bills. Some witnesses testified that appellee could not control the children but that they obeyed appellant. An examination of the record discloses that appellee in her testimony gave but one date on which she stated appellant was guilty of an act of cruelty. This was some two years before the separation.

The decree found the issues for appellee, granted her a divorce, and decreed that certain real estate and personal property should be transferred to her and that appellant pay the sum of $40 per month alimony. She was given custody of the daughter, seven years of age. The three sons having elected to stay with their father, custody of them was awarded to him.

Cruelty constituting ground for divorce under our statute means physical acts of violence, bodily harm or suffer-

ing, or such acts as endanger life or limb or such as raise a reasonable apprehension of great bodily harm. Bad temper, petulance, rude language, want of civil attentions, angry and abusive words, do not constitute extreme and repeated cruelty within the statute. *Trenchard* v. *Trenchard,* 245 Ill. 313; *Maddox* v. *Maddox,* 189 id. 152; *Henderson* v. *Henderson,* 88 id. 248.

Appellee alleges in her bill that she and her husband did not live and cohabit together after October 1, 1934. Acts of cruelty testified to by her, other than the bathroom incident, which according to her testimony occurred about two years before their separation, are alleged to have occurred in November and December, 1934. This was after their separation. It appears that after the bathroom incident she continued to live with him until October 1, 1934, when she alleges in her bill that she left him and refused to live and cohabit with him. Cohabitation of husband and wife after the commission of acts of cruelty is regarded in law as a condonation of the act or acts previously committed. In cases of cruelty where such acts occur after condonation they are in law deemed to have revived the former acts as constituting ground for divorce. (*Teal* v. *Teal,* 324 Ill. 207; *Kennedy* v. *Kennedy,* 87 id. 250.) Even if it be conceded that the record in this case establishes an act of cruelty prior to the separation of the parties hereto, it is evident that acts occurring two years before that separation were condoned. No further acts of cruelty prior to their separation are testified to, and in our opinion the record does not contain corroboration of her testimony concerning specific acts of cruelty. On the other hand, she is directly disputed by her son Verl as to one incident detailed in her testimony. Appellant did not testify.

We are of the opinion that this record does not sustain the chancellor's finding of equities in favor of appellee. This being true, it follows that the decree concerning the

property is not sustained. There is testimony by her that she contributed to the purchase of the property. The decree of the circuit court therefore is reversed without prejudice to her to show in a proper proceeding her contribution, if any, to the purchase price of the real estate.

The decree is reversed and the cause is remanded.

*Reversed and remanded.*