(No. 27879.—

JULIUS G. LEVY, Appellant, *vs.* ELIZABETH LEVY, Appellee.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 16, 1944.*

ORR, VAIL, LEWIS & ORR, and JULIUS H. SELINGER, (WARREN H. ORR, and LOREN E. LEWIS, of counsel,) all of Chicago, for appellant.

EARL J. WALKER, of Chicago, for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of court:

Dr. Julius G. Levy, as plaintiff, instituted suit for divorce from his wife, Elizabeth Levy, upon the grounds of extreme and repeated cruelty. The complaint, as amended, specified five different acts of physical cruelty in addition to general charges of improper conduct such as use of profane language, false accusations of infidelity and destruction of professional business through unseemly demeanor before patients. Mrs. Levy filed an answer denying all material allegations and also a counterclaim for separate maintenance because of the cruelty of plaintiff. Both plaintiff and defendant ask for custody of two minor children, and, in addition, the defendant requested an order directing Dr. Levy to provide for the care, support and education of said children. A trial before the court without a jury resulted in a decree of divorce for plaintiff. The counterclaim of defendant was dismissed for want of equity, but Mrs. Levy was awarded the custody of the two minor children with a weekly allowance for their support and education. The Appellate Court reversed the decree and directed the trial court to reconsider defendant's counterclaim for separate maintenance. (*Levy* v. *Levy,* 320 Ill. App. 608.) Plaintiff petitioned for leave to appeal, which we granted, and the case is here for further review.

The parties herein were married in 1923 and lived together until August 4, 1942. They have two children, a daughter, Claire, and a son, Jerome, who were fourteen and ten years of age, respectively, when this suit was commenced in August, 1942. Since completing his education the plaintiff has specialized in obstetrics and apparently receives a rather substantial income from such practice although that is denied by him. Very little evidence was given on this point, but no complaint is made about the allowance of $60 per week and thus we have no occasion to further consider the same. Mrs. Levy is also a university graduate and was admitted to the bar of Illinois shortly before her marriage, but has not practiced since that time. She underwent a kidney operation in 1938 and still complains of poor health. A maid was employed in the home during most of the married life of the parties and the family has had many other comforts.

Without detailing the testimony of witnesses, we are satisfied from the record herein that plaintiff was corroborated in his proof of the following successive acts of cruelty by defendant: That she struck him on the head with a book; that on two occasions she scratched him on the face and cursed him in the presence of patients at the office; that she struck him with a folding chair and stick; and that she threw a statuette (which did not hit plaintiff) and kicked him. The decree of the trial court so found and these acts of cruelty were likewise accepted by the Appellate Court. Although not specifically mentioned by the Appellate Court, it is also apparent from the record that Dr. Levy committed these acts against defendant: Hit her wrist with a broomstick with such force as to break both a bone and the broomstick; kicked her and bruised her about the arms and body; called her vile names, told her she was too old for him and that he wanted a young wife, suggesting that he or she go to a hotel with another

woman or man so there would be cause for divorce; and, held her up in scorn before their children.

In view of the foregoing statement of facts, what are the correct rules of law to be applied? The Appellate Court, after summarizing the acts of cruelty by the defendant towards her husband, stated that the question was: "Assuming the acts to be properly proved, do they as a matter of law constitute sufficient cause for divorce on the grounds of extreme and repeated cruelty?" The court then referred to the case of *Teal* v. *Teal,* 324 Ill. 207, as holding that slight acts of violence by the wife against the husband do not constitute cruelty where the husband can protect himself by reasonable physical force, and concluded: "Under all of the circumstances of this case, we must find that the acts found in the decree do not come within the rule of extreme and repeated cruelty as defined in the *Teal case* and are not sufficient to support a decree for divorce in favor of the husband." The plaintiff urges that said decision goes far beyond any previously decided cases and flatly adjudicates that the acts in question, or similar acts, cannot again sustain a divorce by a husband against his wife.

Considered alone and as an abstract proposition of law, we could readily agree with plaintiff that the above-quoted conclusion of the Appellate Court is erroneous. While the opinion of this court in the *Teal case* does contain some unguarded suggestions to the effect that slight acts of violence by the wife against the husband do not constitute extreme cruelty so long as there is no reason to suppose that he cannot by reasonable exercise of his marital powers protect himself, yet that decision is otherwise replete with statements which we believe state the correct rule of law in Illinois applicable to such cases as the one here at hand. On page 212 of the *Teal case,* for example, we find the following: "Counsel for the defendant in error state in their brief as a rule of law that if the husband could have

protected himself by the exercise of his marital powers or physical strength no divorce can be granted. There is no such rule of law. On the contrary, it has been expressly announced that he may not achieve domestic tranquility by exchanging blow for blow. (*Garrett* v. *Garrett*, 252 Ill. 318.)" Again, on the same page, it was said: "The authority of the husband to use force in enforcing marital peace and conjugal tranquility by domestic chastisement, if it ever existed, at this day has become obsolete, and the wife is accorded equal authority with the husband in most of the affairs which concern the conjugal relation." On page 213 appears the following: "He has no marital authority by which he can protect himself against her acts of violence. The only protection within his power, if she throws brickbats, rocks, stove-wood, hammers and hatchets at him, is physical strength and his ability to dodge. * * * Where such assaults have occurred and her conduct has been such as to make it probable that they will be renewed, the matter of the strength of the husband and his ability by constant vigilance and agility to escape injury is not material on the question of cruelty." It was likewise repeatedly pointed out in the same opinion that in suits for divorce on the grounds of cruelty no different principles of law or rules of evidence can be applied where the husband is plaintiff than where the wife is plaintiff. Both parties are governed by the same statute which draws no distinction because of sex but in fact states that a divorce may be had where "either party * * * has been guilty of extreme and repeated cruelty." Ill. Rev. Stat. 1941, chap. 40, sec. 1.

We have attempted to trace the origin of the statement quoted in many cases to the effect that slight acts of violence on the part of a wife do not entitle a husband to a divorce on the grounds of cruelty so long as there is no reason to suppose that he will not be able to protect himself by proper exercise of his marital powers. It appears

first to have been used in the case of *De La Hay* v. *Dè La Hay*, 21 Ill. 251, which was likewise a suit for divorce by the husband upon the grounds of cruelty and under a statute requiring proof of "extreme and repeated cruelty." The court there found, and quite properly, that one act of cruelty was not sufficient to come within the statute. There was no need or basis for making reference to slight acts of violence on the part of the wife, yet that proposition, although not the decisive factor, seemingly has been carried forward in nearly every subsequent case wherein the question at hand was under consideration. That opinion was handed down at the January term in 1859 and quite possibly was intended as an expression of the rule applicable to husband and wife at that date. However, it should by no means be construed as subjecting a husband to one degree of cruelty or mistreatment and a wife to quite another. Our statute requires proof of "extreme and repeated cruelty" and obviously "slight acts of violence" are not extreme as to a normal person whether husband or wife.

It is true that the physical condition of the parties involved must be taken into account and each case considered upon its own facts. Thus, while a light slap ordinarily would not constitute extreme cruelty as to the average, healthy person the same act might well have a different effect upon one who is quite frail or an invalid. It is only in this respect that we might differentiate acts of cruelty or calibrate marital violence in degrees. However, the acts of cruelty committed by Mrs. Levy upon her husband were not slight in any proper sense of the word. The plaintiff could have exercised no amount of marital powers which would have protected him from the sudden and unwarranted outbursts of anger at least twice displayed by defendant when she sought him out at his office. A husband is not required to spend his domestic and even his professional hours on the alert for slaps, clawing fingernails,

flying objects and humiliating scenes. If the above-stated acts of cruelty by the defendant were unprovoked and plaintiff stood faultless, unquestionably he would be entitled to a divorce. All contrary inferences by the Appellate Court from the *Teal case* are erroneous.

In our opinion, however, the decision of this case can not stop with a consideration of *Teal* v. *Teal*, 324 Ill. 207. As we have pointed out above, Dr. Levy did not alone suffer extreme and repeated cruelty but he likewise inflicted similar unprovoked acts upon the defendant-counterclaimant. Even though the decree of the trial court found that all acts of cruelty by Mrs. Levy were without provocation on the part of plaintiff, we believe such is manifestly against the weight of the evidence. While the acts of cruelty by the plaintiff and defendant against each other were not in every case provoked by a retaliatory measure of similar enormity, still it is apparent from the record that both were short tempered and almost continuously during the eight months prior to their separation took every opportunity to embarrass or hurt the other. For example, there can be no possible justification for Dr. Levy's conduct in telling the children that their mother was crazy and that they need not mind her or help her in the home. Such statements were sure to result in countermands by Mrs. Levy, more words by the plaintiff, and then an act of violence by the first one who could strike. Likewise, there was no excuse for defendant repeatedly making loud demands for money in front of patients in the doctor's office and there calling him vile, unspeakable names and scratching his face. Neither party exhibited any reasonable degree of forbearance toward the other and neither made any apparent attempt to reconcile their differences, as parties to a marriage must do if the relationship is to survive.

Under such circumstances, the rule long ago announced in *Duberstein* v. *Duberstein*, 171 Ill. 133, is clearly applicable here. As in that case, the defendant asserted re-

crimination in defense of plaintiff's charges and thus we repeat: "Divorce is a remedy provided for an innocent party; * . * * so that, when each party has committed a cause for divorce, the causes being of the same statutory character, neither can complain of the other. Here, it cannot be said, in view of the testimony already quoted, that the appellee is an innocent party. * * * In discussing this subject Mr. Bishop in his work on Marriage, Divorce and Separation, says: 'There is a rule which forbids redress to one for an injury done him by another if himself in the wrong about the same thing whereof he complains.' This doctrine is applicable in the divorce law. * * * It is peculiarly applicable to the facts of this case. * * * the parties here are *in pari delicto,* and therefore must be left to themselves." The same principle was reaffirmed in *Garrett* v. *Garrett,* 252 Ill. 318, wherein the court said: "It is the settled law that divorce is a remedy provided only for an innocent party, and when each party has cause for divorce against the other of the same statutory character neither can be granted a divorce; that a defendant charged with extreme and repeated cruelty may show in defense that the complainant was equally cruel." The defense of recrimination thus bars a divorce to plaintiff upon the present record.

For similar reasons, it would be improper to remand the case to the trial court for reconsideration of the counterclaim for separate maintenance as directed by the Appellate Court. The statute permitting a husband or wife to sue in equity for separate maintenance restricts relief to cases where the living separate and apart is without fault of the party seeking redress. Thus, in *Bielby* v. *Bielby,* 333 Ill. 478, the applicable principles are plainly stated as follows: "To maintain a bill for separate maintenance by a wife against her husband she must not only show that she has good cause for living separate and apart from him but also that such separation was without fault on her part, and if she voluntarily consents to a separation, or is guilty of

failure of duty or of misconduct materially contributing to the destruction of the marital relation, she is not without fault within the meaning of the statute." In view of the above outlined repeated acts of cruelty and improper conduct by Mrs. Levy, she was clearly not without fault in causing the plaintiff to leave the home as he did on August 4, 1942. Dr. Levy, of course, continues to be liable for the proper support, care and education of the two minor children of this marriage, under other appropriate statutes.

Finally, consideration should be given the testimony of defendant to the effect that she is willing to resume normal marital relations with plaintiff for the sake of the children. Perhaps she intended that it also would be for the sake of the parties hereto and, of course, that is highly commendable. However, she only made such statements on the witness stand and the record contains no other proof that such an offer was made to the plaintiff in good faith. Accordingly, she has thus far failed to bring herself within the applicable rule stated in *Hoffman* v. *Hoffman*, 316 Ill. 204, as follows: "The rule also is, that even though an original separation may be without fault of the husband, if afterwards the wife in good faith offers to return and live with him and shows by her conduct that she is sorry for what has transpired, it is his duty to receive her back and provide for her. (*Thomas* v. *Thomas*, 152 Ill. 577; *Johnson* v. *Johnson, supra* [125 Ill. 510].) But unless the preponderance of the evidence shows that such offer to return is made in good faith, the husband cannot be held liable for separate maintenance on his refusal to resume marital relations with her." See, also, *Van Dolman* v. *Van Dolman*, 378 Ill. 98.

The judgment of the Appellate Court is reversed and the cause remanded to the superior court of Cook county, with directions to dismiss both the complaint and the counterclaim for want of equity.

*Reversed and remanded, with directions.*