## Loretta Mason, Appellant, v. Paul E. Mason, Appellee.

## Gen. No. 45,146.

(NIEMEYER, J., dissenting.)

 Opinion filed December 4, 1950. Rehearing denied December 18, 1950. Released for publication December 19, 1950.

SOL R. FRIEDMAN & I. S. FRIEDMAN, of Chicago, for appellant.

GEORGE YELLEN, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal is from a decree of divorce in favor of defendant and from an order denying the petition to vacate the decree. The original complaint filed by plaintiff on July 7, 1947, was for separate maintenance, charging desertion and, by strong implication, adultery. An answer was filed and also a cross-complaint for divorce, charging plaintiff with cruelty.

The cause was heard November 2, 1949, and a decree entered on November 3, 1949, dismissed the separate maintenance complaint for want of equity and granted a divorce to defendant and cross-complainant on the charge of cruelty. It gave the custody of the children to plaintiff and directed defendant to pay plaintiff $20 a week for their support and maintenance.

Upon the hearing no evidence was offered by plaintiff as to the inference of adultery, nor was any explanation made for the failure to offer such evidence, though the cause had been pending for two years.

On November 30, 1949, plaintiff filed her petition to vacate the decree on the grounds of newly discovered evidence, alleging that plaintiff had discovered, after the entry of the decree, that the witnesses named in her petition would testify for her to circumstances that would indicate defendant was guilty of adultery. Attached to her petition were affidavits of the witnesses named in the petition, setting forth facts to which they would testify, if called as witnesses. An examination of the petition and affidavits satisfies us that they fall far short, even if true, of proving the charge of adultery. A hearing was had upon the petition, and an order entered dismissing the petition.

141

Plaintiff now argues that the evidence upon the trial of the cause fails to support the decree of divorce on the ground of cruelty; that the facts testified to by defendant established only slight acts of cruelty, and do not constitute extreme and repeated cruelty under the statute; and that the corroborating witnesses, not eyewitnesses to the alleged acts of cruelty, merely testified that they had seen the bruises testified to by defendant, immediately after the alleged acts of cruelty.

 Extreme and repeated cruelty, under the statute, to warrant a divorce, has been defined as "physical acts of violence, bodily harm or suffering, or such acts as endanger life or limb or such as raise a reasonable apprehension of great bodily harm." *Wesselhoeft v. Wesselhoeft*, 369 Ill. 419, 424.

In *Levy v. Levy*, 388 Ill. 179, 183, the court said:

". . . that in suits for divorce on the grounds of cruelty no different principles of law or rules of evidence can be applied where the husband is plaintiff than where the wife is plaintiff. Both parties are governed by the same statute which draws no distinction because of sex but in fact states that a divorce may be had where 'either party . . . has been guilty of extreme and repeated cruelty.' Ill. Rev. Stat. 1941, chap. 40, sec. 1."

In the case cited the court further traced the development of the rule since the early case of *De La Hay v. De La Hay*, 21 Ill. 252, down to *Teal v. Teal*, 324 Ill. 207, to the effect that slight acts of cruelty on the part of the wife will not constitute extreme and repeated cruelty under the statute, and said (p. 184):

"However, it should by no means be construed as subjecting a husband to one degree of cruelty or mistreatment and a wife to quite another. Our statute requires proof of 'extreme and repeated cruelty' and

obviously 'slight acts of violence' are not extreme as to a normal person whether husband or wife.

"It is true that the physical condition of the parties involved must be taken into account and each case considered upon its own facts. Thus, while a light slap ordinarily would not constitute extreme cruelty as to the average, healthy person the same act might well have a different effect upon one who is quite frail or an invalid. It is only in this respect that we might differentiate acts of cruelty or calibrate marital violence in degrees."

In the instant case, defendant testified that an argument arose on November 15, 1946, about bills incurred by plaintiff; that he requested her to cut them down; that she became angry, took a saucepan and hit him on the head, made a gash along his ear, and started swinging and hit him on the shoulder and back of the neck; that on January 4, 1947, another argument arose about the same subject matter; that she started swinging, and that he turned his back to her and she hit him on the back. The evidence of the corroborating witnesses has been held competent. *Albert v. Albert,* 340 Ill. App. 582; *Muir v. Muir,* 310 Ill. App. 443.

██ In our judgment, under the reasoning of the cases cited, this evidence, if believed, constitutes extreme and repeated cruelty under the statute. The chancellor was in a better position to judge, having seen the witnesses, and we should not disturb his finding unless we are satisfied that it is against the manifest weight of the evidence. We cannot, upon this record, say it is against the manifest weight of the evidence. We think the chancellor exercised a sound discretion in denying the petition to vacate the decree, upon the showing made.

The decree and order appealed from are affirmed.

*Affirmed.*

Tuohy, J., concurs.

NIEMEYER, P. J., dissents. Plaintiff and defendant were married September 4, 1937. They ceased cohabitation as husband and wife around January 4, 1947, but lived in the same apartment until the latter part of February 1947, when defendant left. Three children were born of the marriage, aged 8, 6 and 2 years when the decree was entered November 3, 1949. The last child was born during the pendency of this suit, commenced July 7, 1947.

The first count of the complaint is for separate maintenance and charges:

". . . defendant, without cause or provocation on the part of plaintiff, has been guilty of wilfully deserting and abandoning plaintiff, on January 6, 1947; that defendant has been keeping company with one Irene Woelke, and that said Irene Woelke admitted to plaintiff on April 2, 1947, that she was seeing defendant, and promised to stop seeing him, but that on the contrary said relationship has continued."

The second and third counts, not involved in this appeal, charge Irene Woelke with alienating the defendant's affections for plaintiff and his children. The attorney representing the defendant in the trial court and on this appeal, entered the appearance of Woelke. Defendant answered the complaint against him August 5, 1947. More than 16 months later, on December 20, 1948, he filed his counterclaim for divorce, charging cruelty on November 15, 1946 and January 4, 1947. Plaintiff answered denying the charge of cruelty. She did not set up adultery of defendant as a matter of recrimination. She does not charge adultery in her complaint for separate maintenance. Her allegation that defendant was "keeping company" with Irene Woelke was proved on the trial and admitted by defendant.

144

Plaintiff testified that in December 1946, she found a picture of a woman (plaintiff's exhibit 2 for identification) in defendant's billfold; that defendant would not tell her who the woman was but said that someone had given the picture to him and he wanted it. Mrs. Arcera, a neighbor, testified that she saw the woman in the exhibit in June 1947 with defendant in his automobile on Kedzie avenue; that that was not the only occasion when she saw the defendant with the woman. Mrs. Mattis, another neighbor, testified that since 1947 she saw defendant on a streetcar with a lady friend, not the plaintiff.

Defendant, called as a witness under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1949, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060], testified that plaintiff complained about his association with Irene Woelke; that he knew her and had been out with her; that the first time plaintiff struck him was around November 15, 1946; that she struck him again on January 4, 1947, and on another occasion, but he could not remember when it was. When testifying in support of his counterclaim he said that on November 15, 1946, plaintiff hit him with a saucepan, making a gash in his ear, and hit him on the shoulder and back of the neck, and that on January 4, 1947 "She told me she wanted me to join her church. I said I never would, but she could go with the children. Then I said 'We have to cut down on bills'; she got angry and started swinging at my head and I turned my back; she hit my back and said for me to get out, and that is when I got out." He further testified that he came back the next day and said that "if she was going to be like that give me a divorce and I would pay for it." She said "No, you never will"; that he left and never lived with plaintiff as her husband since that time; that he lived in the house the first three weeks in February; that he talked with her about a divorce; that the last

day he was there he got into another argument about religion; that she said "Get out," and he left. On cross-examination he testified that he had asked for a divorce many times, and plaintiff told him to get out; that she did not use any force or violence in getting him to leave in February 1947; that she did not strike him in February; that he didn't give her a chance. Plaintiff testified that she never struck him and never had any arguments with him about religion.

Defendant called Otto Hartwig and his stepdaughter, Mrs. Cynar. Hartwig testified that he saw the defendant in a bowling alley on November 15, 1946; that he had a cut on his ear and a bruise at least the size of a half-dollar on his right shoulder; that defendant went to the home of the witness and remained for a couple of hours. On January 4, 1947, the witness again saw defendant at the bowling alley and he had a cut and bruise on his right shoulder; defendant again went to the home of the witness. Mrs. Cynar testified she saw defendant at the home of her stepfather on both occasions; on November 15, 1946, he had a cut, not very big, on his right ear, and bruises on the neck about the size of a dime; on January 4, 1947, she saw bruises on the right side of the neck; she didn't know what sort of bruises they were, didn't remember the color and never noticed how many there were.

Do the acts testified to by defendant constitute "extreme and repeated cruelty?" It is not enough that his testimony as to November 15, 1946, establishes an act of extreme cruelty. One act alone will not bring the case within the statute. *Fritz v. Fritz,* 138 Ill. 436, 443; *Teal v. Teal,* 324 Ill. 207, 214. ". . . obviously 'slight acts of violence' are not extreme as to a normal person whether husband or wife." *Levy v. Levy,* 388 Ill. 179, 184. The essentials of extreme cruelty are stated in *Wesselhoeft v. Wesselhoeft,* 369 Ill. 419, 424, as follows:

146

"In *Teal v. Teal,* 324 Ill. 207, we said the statute means acts of physical violence producing bodily harm,—such acts as put the person against whom they are exercised in personal danger and endanger life and limb. Cruelty constituting ground for divorce under the statute means physical acts of violence, bodily harm or suffering, or such acts as endanger life or limb or such as raise a reasonable apprehension of great bodily harm. (*Moore v. Moore,* 362 Ill. 177.)"

Applying the rule stated to the facts then before it, the court held that "the testimony is sufficient to warrant the finding of extreme cruelty on the first and third occasions charged." The testimony as to the second act complained of—rejected by the court as not warranting a finding of extreme cruelty—was that the husband ordered his wife out of the house and shoved her against a chair, hurting her.

The testimony of defendant as to the incident of January 4, 1947, is quoted above in full. Whatever blows were inflicted on him were from the open hand or closed fist of plaintiff. There can be no inference of the use of a weapon. The blows could not have been heavy or forceful. Defendant made no effort to avoid them or restrain plaintiff. He merely turned his back to receive them. He does not testify that they were painful, that they caused bodily harm or that they even left a mark or bruise. In the absence of testimony of witnesses to the assault that defendant was actually marked or bruised by plaintiff's blows, or that the blows were such as would probably leave a mark or bruise, as from a saucepan or club, the testimony of defendant's witnesses that some time later on the day of the assault—how much later is not shown—they saw bruises on defendant, is of no probative value on the question whether plaintiff struck defendant and caused marks or bruises. However, had plaintiff's blows left

147

the insignificant bruises testified to by defendant's witnesses, the evidence would not establish an act of extreme cruelty. Defendant at no time apprehended great bodily harm, or any bodily harm. He testified that he left on January 4th when plaintiff told him to get out; that he returned the next day and lived in the apartment with plaintiff for three weeks in February; that he was not struck or threatened during that period; that he left following an argument on religion in which plaintiff again told him to get out. Defendant's counterclaim should have been dismissed.

Within 30 days after the entry of the decree plaintiff filed a petition to vacate the decree, stating among other things that since the trial she had learned that Edd Mason, an uncle of defendant residing in Iowa, would testify in respect to a family reunion in LuVerne, Iowa on May 30, 1948; that "defendant Paul E. Mason was present at the said family reunion with said Irene Woelke, and that he introduced Irene Woelke to Edd Mason as his girl friend, and he informed Edd Mason that he was on a two week vacation with said Irene Woelke; that they were alone on said vacation, and were traveling together; and said Edd Mason will further testify that the circumstances of said vacation trip indicated that defendant was guilty of adultery with said Irene Woelke." Attached to the petition was the affidavit of Edd Mason supporting the allegations of the petition and stating that he first communicated the facts to plaintiff on or about November 11, 1949. There was also a supporting affidavit from the wife of Edd Mason as to the presence of defendant and Irene Woelke at the Iowa reunion. As hereafter shown, it is immaterial whether this petition meets the technical requirements of a petition to vacate a judgment or decree in an ordinary action at law or in equity because of newly discovered evidence. Defendant moved to strike the petition. The court did

148

not rule on the motion but ordered the parties to produce their witnesses. On the hearing the court said "I will hear any evidence you have to prove your client (plaintiff) exercised diligence to obtain this evidence here." Plaintiff, Edd Mason, his wife and another witness were examined. At the close of the testimony the court said "You haven't shown diligence." The petition was denied without inquiry into the testimony of the Masons as to the adultery of the defendant.

The court misapprehended the nature of the proceeding before it and its duty in the situation presented. If this were an action on a promissory note, diligence of the plaintiff, moving to vacate a judgment, would be a pertinent subject of inquiry. In a suit for divorce the State is a third party. Its interests are in the keeping and under the protection of the court. *Ollman v. Ollman,* 396 Ill. 176, 183. The State never loses a right by laches. *Johnson v. Johnson,* 381 Ill. 362, 371, quoting with approval 2 Bishop on Marriage, Divorce and Separation (663, 664). The question before the court was not whether plaintiff was entitled as a matter of right to have the decree vacated, but whether the interest of the State required that the decree be opened up for inquiry into the relations of defendant and Irene Woelke. In *Ollman v. Ollman, supra,* where the defendant failed to plead condonation as a defense, the court said (p. 182):

"It (the State) does not plead, but is represented by the conscience of the court; and so, whenever a defense comes out in the evidence, whether alleged or not, it is fatal to the proceedings. (*Johnson v. Johnson,* 381 Ill. 362.) This is true, not because the defendant has any just right to take advantage of a defense which he has not pleaded, but because the public interest is involved, and the conscience of the court, appealed to by this interest, does not permit the divorce unless the facts

represented on the whole record justify it. If it were otherwise, divorces would be granted in cases where the evidence disclosed that no right to a divorce existed, and the public good, which suffers from every dishonest divorce and from every one not as well within the spirit of the statute as within its terms, would be sacrificed to rules of procedure.''

And further (p. 183):

''Hence, whenever in the course of the trial, it appears that the action is collusive or barred, it is the duty of the court, regardless of the pleadings, *fully to inquire, of its own motion,* as the representative of the State, into the facts and circumstances and to act in accordance with the facts thus developed.'' (Emphasis added.)

In this case the court should have inquired of its own motion into the relations of defendant and Irene Woelke. Plaintiff introduced evidence of finding a photograph of another woman in defendant's billfold, and two neighbors testified to seeing defendant with a woman other than plaintiff in his automobile and on a streetcar. Defendant admitted that he had been out with Irene Woelke. Plaintiff was in no position to make an extended investigation to procure proof of adultery. The evidence shows without contradiction that up to the separation of the parties she contributed to the support of the family by working part-time in a knitting mill and earning around $20 a week; that she continued this work after the separation. Because of her poverty this court has permitted the filing of a typewritten abstract of record and briefs. A person in plaintiff's position would not ordinarily expect aid from the defendant's blood relatives to prove him guilty of so serious a charge. She acted promptly after receiving the information. Furthermore, the record shows that the serious conflicts between the parties, according to defendant, began at about the time of

the discovery of the photograph. Defendant admits that after that time he frequently asked plaintiff to get a divorce, and offered to pay for it. Under these circumstances the court should not have permitted defendant's testimony on the trial to end with the admission of having been out with Irene Woelke. When the court had Edd Mason and his wife before him on the hearing on the petition, he should have insisted, on his own motion, on an examination of them as to the circumstances of the attendance of defendant and Irene Woelke at the family reunion and their vacation trip together. If the facts developed warranted it, he should have insisted on examination of defendant and Irene Woelke in respect to these matters. It was error to dismiss the petition without making this inquiry.

The majority opinion ignores the holdings of this court in *Mischler v. Mischler*, 333 Ill. App. 214; *Borin v. Borin*, 335 Ill. App. 450, and *Pressney v. Pressney*, 339 Ill. App. 371. In the *Mischler* case, *supra*, we said:

"It is therefore the duty of the court, as representative of the State, when a fact or circumstance appears in evidence which might affect the right to a divorce, to require a full and complete disclosure of all material matters if the parties themselves fail to take such steps."

Plaintiff is entitled to a decree for separate maintenance.