**Louise M. Bogaerts, Appellant, v. Arthur A. Bogaerts, Appellee.**

Gen. No. 45,310.

Opinion filed October 24, 1951. Released for publication November 21, 1951.

MARGARET E. FLYNN, of Chicago, for appellant; EMMETT J. GALVIN, of Chicago, of counsel.

MEYER & IRVING H. WEINSTEIN, of Chicago, for appellee; IRVING H. WEINSTEIN, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

From a decree of divorce in favor of defendant, upon his cross-complaint, charging extreme and repeated cruelty, and from the dismissal for want of equity of plaintiff's complaint for separate maintenance, alleging she was living separate and apart from defendant without her fault, and charging him with cruelty, drunkenness and adultery, plaintiff appeals.

Plaintiff contends that the decree is against the manifest weight of the evidence; that the trial court admitted incompetent evidence in corroboration of defendant's charge of cruelty; that the evidence on behalf of defendant at best proved only slight acts of violence

and did not constitute extreme and repeated cruelty under the divorce statute; and that the evidence amply proved the charge of adultery on the part of defendant.

■ Unless a reviewing court is convinced that a decree is against the manifest weight of the evidence, it should not disturb the finding of the chancellor, who heard and saw the witnesses and, as so frequently stated, was in a better position to judge the credibility of the witnesses, *Marcy v. Marcy,* 400 Ill. 152; *Mason v. Mason,* 342 Ill. App. 140. This court said in *Ryan v. Ryan,* 321 Ill. App. 467, at p. 470:

"The court saw the several witnesses, and the decision was one which depended upon the weight given the testimony. We cannot substitute our judgment for its and say that plaintiff was not telling the truth and that the trial court should have believed the defendant."

There is evidence in this record that the parties had frequent arguments concerning the wife's suspicion of the husband's alleged intimacy with other women. The son of the parties, testifying for plaintiff, stated that arguments he heard were about other women—"that was the general contention of the family arguments."

Defendant testified there were several arguments about her desire for them to live with her mother, which he refused to do; that on October 21, 1948, while they were having their supper, the same kind of argument arose; that in a fit of temper she threw a pot cover and a fork at him; that she picked up an old bread knife and threatened to kill him; that she was in a rage; that she hit him on the head, which caused a bump, and that she hurt his thumb in the affray; that on October 25, 1948, when she asked him to move to her mother's home, and he told her it was final that he would not, she kicked him in the shin and scratched his face; that marks were left on his shin, and that he lived separate and apart from her since that date.

The corroboration relied upon as to her cruelty is in the testimony of his mother and stepfather. The mother testified that on October 22, 1948, some twenty-four hours after the alleged cruelty of October 21, defendant showed her the scratches on his face and the marks on his head, and told her his wife did it because he would not move in with her mother. The conversation was received in evidence over the objection of plaintiff. Again, over plaintiff's objection, she was allowed to testify to a conversation with defendant on October 25, when he called at her home, that she saw his foot was swollen, and he told her plaintiff had kicked him in the ankle. Defendant's stepfather testified that he saw defendant on October 22 and observed the scratches on his face and a bump on his head. Over objection of plaintiff he was allowed to testify that defendant told him plaintiff did it. He said he saw a long scratch on defendant's face on October 25, and defendant told him plaintiff gave it to him. The latter conversation was also received over objection.

Plaintiff categorically denied the acts of cruelty charged against her by defendant. Plaintiff contends that the conversations testified to by the two witnesses were incompetent, and that the chancellor committed error in admitting the hearsay testimony.

██ The testimony of these corroborating witnesses as to their observation of the marks on defendant has been held competent. *Berdell v. Berdell,* 80 Ill. 604; *Mason v. Mason, supra; Albert v. Albert,* 340 Ill. App. 582. Their hearsay evidence that plaintiff caused the marks and injuries they observed on defendant was held incompetent by this court in *Ryan v. Ryan, supra.* We there said:

"The test of admissibility of the statements is their spontaneity and we cannot find error, unless the court abused its discretion in ruling on the admissibility.

*Peterson v. Cochran & McCluer Co.,* 308 Ill. App. 348. Ryan had the burden of showing the statements were spontaneous. *Johnson v. Swords Co.,* 286 Ill. App. 377. While courts recognize the need of applying the *res gestae* rule to divorce and separate maintenance cases because the nature of the marriage relation renders witnesses to actual misconduct improbable; nevertheless, the element of spontaneity is required (Bishop on Marriage, vol. 2, sec. 1448), and should be in actions attacking that sanctified and necessary relationship. Neither *Passmore v. Passmore,* 113 Ind. 237, 15 N. E. 338 nor *Berdell v. Berdell,* 80 Ill. 604, relied upon here announce a different rule; and *Muir v. Muir,* 310 Ill. App. 443, should not be understood as holding that practice in divorce cases has changed the rule.''

In *Druce v. Druce,* 313 Ill. App. 169, 175, such hearsay testimony was held incompetent.

The holding in *Albert v. Albert, supra,* that such hearsay testimony was competent may be distinguished on the basis that the husband admitted to the corroborating witness the act of violence there complained of, and he failed to deny on the witness stand that he made such an admission to the corroborating witness. It does not appear in the case cited that there was any objection made, as in the instant case, to the hearsay testimony.

We do not think that the court in *Muir v. Muir,* 310 Ill. App. 443, 446, intended to hold such hearsay testimony competent, but merely that testimony of the corroborating witness that she observed the bruises and marks was competent. The court there cited *Berdell v. Berdell, supra,* in support of its holding. In the *Berdell* case the question of such hearsay testimony was not before the court.

██ Upon this question we adhere to our former ruling in the *Ryan* case. However, in a trial before

501

the chancellor, without a jury, the settled rule is that the chancellor is presumed to have ignored the incompetent testimony, and if there is sufficient competent evidence to sustain the decree it will not be reversed. *A. B. Dick Co. v. Sherwood Letter File Co.,* 157 Ill. 325, 331; *Miller v. Gordon,* 296 Ill. 346, 351.

Plaintiff contends that the evidence of cruelty, even if believed, proves only slight acts of cruelty and does not constitute extreme and repeated cruelty as required by the Divorce Act. The same contention was raised in *Mason v. Mason, supra,* where the cruelty complained of was less severe in degree than the cruelty in the instant case, and this court (First Division) held that the cruelty was sufficient under the statute. The cases in Illinois upon that question were there reviewed.

There is no dispute in the evidence that the parties separated October 25, 1948. Whether she thenceforth lived separate and apart from him without her fault, because of his conduct, was a question within the province of the chancellor to determine upon the evidence before him. We cannot say that his finding, adverse to her, is against the manifest weight of the evidence.

We have carefully examined the evidence for plaintiff upon the charge of adultery on the part of defendant, and we think it lacks legal proof of adultery.

The decree of the superior court is correct, and it is affirmed.

*Affirmed.*

KILEY, P. J. and LEWE, J., concur.