Arline Elston, Plaintiff-Appellant, v. Arthur Lyle Elston, Defendant-Appellee.

Gen. No. 10,491.

Opinion filed August 23, 1951. Released for publication September 12, 1951.

EAGLE & EAGLE, of Rock Island, for appellant.

HUBER, REIDY & KATZ, of Rock Island, for appellee; ISADOR I. KATZ, of Rock Island, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Arline Elston, plaintiff, instituted her suit for separate maintenance against her husband, Arthur Lyle Elston, upon the grounds of extreme and repeated cruelty. The complaint charged that Mr. Elston on May 28, 1950, came home intoxicated without reasonable cause, and struck Mrs. Elston repeatedly, causing her nose to bleed, breaking her teeth, and that he left the home of the parties. Mrs. Elston asked for separate maintenance, custody of the child, and a reasonable amount for her support.

Mr. Elston filed his answer, admitting that he struck Mrs. Elston on May 28, but alleged that it was in self-defense. Mr. Elston also filed a counterclaim for divorce in which he charged Mrs. Elston with bigamy, adultery, and extreme and repeated cruelty. Mrs. Elston denied these charges in her reply to the counterclaim. The matter was heard before the court without a jury. The court found that the separate maintenance suit could not be maintained, and dismissed it for want of equity, and awarded Mr. Elston a divorce on his counterclaim on the ground of extreme and repeated

cruelty. He awarded the custody of the child of the parties, Linda Elston, who was then one and a half years old to Mrs. Elston, and provided that Mr. Elston pay her certain sums for the support of the child.

Arline Elston, plaintiff-appellant, appeals from this order maintaining that she should have been awarded a decree for separate maintenance against her husband, and that Arthur Lyle Elston, the defendant-appellee, should be denied a divorce on the ground of recrimination, as shown by the manifest weight of the evidence.

Counsel for Mr. Elston admits that there is no basis for a decree of divorce in his client's favor on the ground of bigamy or adultery, but maintains that the decree of the circuit court should be affirmed, as it is in conformity with and not against the manifest weight of the evidence.

The testimony is highly conflicting, and it will be impossible to detail all of it in this opinion. It appears from the evidence that Mr. and Mrs. Elston were married in 1947, and lived together continuously until May 28, 1950. Mr. Elston had been married three times before. At the time of the marriage Mrs. Elston had an illegitimate child named Peter. There is considerable testimony in the record as to what knowledge Mr. Elston had of whether or not the child was legitimate or otherwise, but this has little if anything to do with the ultimate issues to be decided here.

From the inception of the marriage the parties had serious marital difficulties, were constantly quarreling and bickering over each other's conduct with reference to drinking, and affairs with the other sex, but no blows were struck between the parties until about March, 1950. On that date, Mr. Elston testified, after some preliminary altercation Mrs. Elston kicked him with her feet and raked him in the face with her fingernails, and that he then pushed her over on the davenport to protect himself. There is no corroboration whatever

of this alleged act of cruelty. She denies that it ever occurred. This is one of the acts of cruelty relied upon by the defendant in his counterclaim. The second act of cruelty testified about occurred on April 10, 1950. Mr. Elston testified, at that time that after some words his wife flew into a rage and threw the contents of a cup of tea at him, and the cup hit him on the face, injuring him slightly, and breaking his glasses. She then came around the table and scratched his face and kicked his legs and he then held her until she cooled off. This testimony is denied by Mrs. Elston, except she says they did have an altercation on that date, and she admitted throwing the cup and hitting him with it. There is no corroboration of this act of cruelty. The acts of cruelty alleged by both parties and relied on by both of them to sustain their causes of action occurred on May 28, 1950.

Mr. Elston testified that on May 28, 1950, he had been away all day and came home rather late in the evening with a neighbor, Mr. Brown. Mr. Brown did not testify at the trial. Mr. Elston further testified that he was slightly under the influence of liquor. As he got out of the car he fell down on one knee, but did not strike his chest. His wife appeared at the car and was very angry, and she told him he should get into the house, that he ought to be ashamed of himself, coming home drunk and lying on the grass where the neighbors could see him. He then went into the house. She flew into a rage and started to strike at him with her fists. He slammed her across the hall into the bathroom, but did not strike her. He then lay down on the bed and went to sleep.

Mrs. Elston testified that he called her vile names, that she took hold of his shoulders, and that he then struck her many times, broke her jaw, bloodied her nose, and injured her eye. She then called the police. She testified also that her husband was definitely intoxicated. She denied striking him, except that she

might have struck out at him in self-defense during the altercation. There was no one else there until the police officers arrived. When they arrived, William H. Doeckel, one of the police officers testified that Mrs. Elston's arms and face were covered with blood; that Mr. Elston was lying in a back room. They woke him up, and it was his opinion that Mr. Elston had been drinking. Elston did not appear to be injured.

Dr. Eugene Moses testified on behalf of Mr. Elston that he examined Mr. Elston at his residence about eleven o'clock in the evening of May 28, 1950. He had a collapsed right lung, and a slight discoloration on the right side over the right lung near the shoulder. An X-ray showed that the right lung was collapsed. Mr. Elston was in a serious condition when the doctor saw him. The house was in much disorder, there were marks of injury on the face of Mrs. Elston, the doctor smelled alcohol on Mr. Elston's breath, and he said he was confused as to just what happened.

This, in substance, is the testimony in regard to the questions of cruelty alleged both in the separate maintenance suit and the counterclaim.

██ It is necessary to decide whether the alleged acts of cruelty on May 28, 1950, were extreme acts of cruelty by Mr. Elston towards his wife or vice versa or by both of them. There is no question that Mrs. Elston received terrific injuries. This is shown by her testimony and by the corroborating testimony of Dr. Moses and of Police Officer Doeckel. Mr. Elston was partially intoxicated, confused, and apparently did not know what had happened. The blows that he claimed were struck by his wife could not have caused his collapsed lung. The testimony showed that he had only a small contusion. It is difficult to imagine how this small contusion could have caused his serious injury. His injury could have been caused by his fall out of the car, or at some other time during the day while he was partially intoxicated, and he might not have remem-

bered anything about it. His testimony that his wife obtained her serious injuries while he was defending himself, caused by her being thrown away from him in self-defense is incredulous, and did not happen that way. She had her faculties at all times, and we believe that her testimony as to how she received her injuries is true. He committed a brutal assault upon his wife at that time without legal provocation. The findings of the trial court that his injuries were caused by an act of cruelty committed by his wife are palpably and manifestly against the weight of the evidence.

██ Appellant's counsel urge under the doctrine of recrimination that the husband cannot maintain his action upon his counterclaim. This doctrine is not new, and often arises in cases involving divorces. The doctrine is fully analyzed and the cases are partially collected in a late decision of the Supreme Court, *Levy v. Levy*, 388 Ill. 179. In this case the husband had filed a divorce suit against his wife charging her with extreme and repeated cruelty and other grounds. The wife filed an answer denying the cruelty charge, and filed a counterclaim for separate maintenance alleging cruelty on the part of her husband. The court says on Page 185 of the opinion:

"In our opinion, however, the decision of this case can not stop with a consideration of *Teal v. Teal,* 324 Ill. 207. As we have pointed out above, Dr. Levy did not alone suffer extreme and repeated cruelty but he likewise inflicted similar unprovoked acts upon the defendant-counterclaimant. Even though the decree of the trial court found that all acts of cruelty by Mrs. Levy were without provocation on the part of plaintiff, we believe such is manifestly against the weight of the evidence. While the acts of cruelty by the plaintiff and defendant against each other were not in every case provoked by a retaliatory measure of similar enormity, still it is apparent from the record that both were short tempered and almost continuously during the eight

months prior to their separation took every opportunity to embarrass or hurt the other. For example, there can be no possible justification for Dr. Levy's conduct in telling the children that their mother was crazy and that they need not mind her or help her in the home. Such statements were sure to result in countermands by Mrs. Levy, more words by the plaintiff, and then an act of violence by the first one who could strike. Likewise, there was no excuse for defendant repeatedly making loud demands for money in front of patients in the doctor's office and there calling him vile, unspeakable names and scratching his face. Neither party exhibited any reasonable degree of forbearance toward the other and neither made any apparent attempt to reconcile their differences, as parties to a marriage must do if the relationship is to survive.

"Under such circumstances, the rule long ago announced in *Duberstein v. Duberstein,* 171 Ill. 133, is clearly applicable here. As in that case, the defendant asserted recrimination in defense of plaintiff's charges and thus we repeat: 'Divorce is a remedy provided for an innocent party; . . . so that, when each party has committed a cause for divorce, the causes being of the same statutory character, neither can complain of the other. Here, it cannot be said, in view of the testimony already quoted, that the appellee is an innocent party. . . . In discussing this subject Mr. Bishop in his work on Marriage, Divorce and Separation, says: "There is a rule which forbids redress to one for an injury done him by another if himself in the wrong about the same thing whereof he complains." This doctrine is applicable in the divorce law. . . . It is peculiarly applicable to the facts of this case. . . . the parties here are *in pari delicto,* and therefore must be left to themselves.' The same principle was reaffirmed in *Garrett v. Garrett,* 252 Ill. 318, wherein the court said: 'It is the settled law that divorce is a remedy provided only for an innocent party, and when

239

each party has cause for divorce against the other of the same statutory character neither can be granted a divorce; that a defendant charged with extreme and repeated cruelty may show in defense that the complainant was equally cruel.' The defense of recrimination thus bars a divorce to plaintiff upon the present record.''

██ The law as announced in this case is applicable and decisive here. Assuming that the appellee's proof showed acts of extreme cruelty by his wife on the first two occasions as above narrated, notwithstanding this, the husband cannot recover, for his cruelty on May 28, 1950, was equal or worse than hers. The parties here, as in the *Levy* case, *supra,* are *in pari delicto,* and the law will afford neither of them relief. The fact that the affirmative defense of recrimination was not pleaded by the wife is of no moment or to be considered in a divorce suit where the court represents the State as well as impartially trying the issues joined by the pleadings. (*Ollman v. Ollman,* 396 Ill. 176.)

Appellee urges and the court recognizes the rule that the trial judge, having seen and heard the witnesses, is in a better position to determine the credence to be given the testimony than the Appellate Court on review. (*Mason v. Mason,* 342 Ill. App. 140.)

The court is equally cognizant of the rule urged by the appellee that where the decree of the trial court is supported by credible evidence, the court will not disturb the decree unless the same is clearly and palpably against the preponderance of the evidence. (*Arliskas v. Arliskas,* 343 Ill. 112; *Berlingieri v. Berlingieri,* 372 Ill. 60.)

██ These rules of law are well established, but are not applicable where the court is convinced that the decree is clearly and manifestly against the weight of the evidence. (*Druce v. Druce,* 313 Ill. App. 169; *Bielby v. Bielby,* 333 Ill. 478; *Hoffman v. Hoffman,* 316 Ill. 204.)

■ This court finds that the decree of divorce awarded by the trial court to Mr. Elston on his counter-claim is manifestly against the weight of the evidence and is barred by the doctrine of recrimination.

■ The evidence of Mrs. Elston's separate maintenance action is so interwoven with the other evidence in the case that it can be and is all considered together. In *Levy v. Levy, supra,* page 186, the court says:

"The statute permitting a husband or wife to sue in equity for separate maintenance restricts relief to cases where the living separate and apart is without fault of the party seeking redress. Thus, in *Bielby v. Bielby,* 333 Ill. 478, the applicable principles are plainly stated as follows: 'To maintain a bill for separate maintenance by a wife against her husband she must not only show that she has good cause for living separate and apart from him but also that such separation was without fault on her part, and if she voluntarily consents to a separation, or is guilty of failure of duty or of misconduct materially contributing to the destruction of the marital relation, she is not without fault within the meaning of the statute.' In view of the above outlined repeated acts of cruelty and improper conduct by Mrs. Levy, she was clearly not without fault in causing the plaintiff to leave the home as he did on August 4, 1942. Dr. Levy, of course, continues to be liable for the proper support, care and education of the two minor children of this marriage, under other appropriate statutes."

■■ The language of this opinion is quite applicable here. The chancellor may have well believed from the testimony that the wife, due to her acts of cruelty toward her husband, due to her constant quarreling and bickering with him, and due to the fact that she left his home without proper explanation to him at different times, and the other facts concerning her conduct as above narrated in this opinion, would justify the trial judge in finding that she was not living separate and

apart from her husband without fault on her part, and that she was not entitled to maintain her separate maintenance suit. The trial judge's findings should not and will not be disturbed. It was her duty to prove her case by a preponderance of the evidence and within the rules of law as above announced. We do not find under the law that the trial court erred in denying her relief.

That portion of the decree of the circuit court dismissing the complaint for separate maintenance is affirmed and the portion thereof awarding the counterclaimant, Arthur Lyle Elston, a divorce is reversed and this cause is remanded to the circuit court of Rock Island county with directions to enter such a decree.

*Affirmed in part and reversed in part and cause remanded with directions.*