Florence Maybaum, Appellee, v. William Herbert Maybaum, Appellant.

Gen. No. 45,776.

Opinion filed December 30, 1952. Rehearing denied January 27, 1953. Released for publication January 28, 1953.

EDGAR A. JONAS & FREDERICK C. JONAS, both of Chicago, for appellant; JOSEPH J. LOVERDE, of Chicago, of counsel.

ARTHUR GEORGE, of Chicago, for appellee.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff filed her complaint against defendant in the superior court of Cook county praying that a final judgment of divorce entered in the superior court of the State of California which adopted and made a property settlement agreement a part thereof be established here as a foreign judgment to be enforced by appropriate equitable remedies. Plaintiff asked judgment here against the defendant for certain monthly

installments and past-due installments under the provisions of the alleged property settlement agreement and for reasonable attorney's fees. Defendant filed his answer setting up the remarriage of plaintiff as a basis for terminating further payments. The court found the issues for the plaintiff, dismissed the cross-complaint, entered judgment for $8,700 as the amount past due under the property settlement and entered a decree establishing the California decree in this jurisdiction as a foreign judgment.

The question with which we are here confronted is whether the agreement between the parties entered into December 9, 1940 and made part of the decree is a property settlement agreement or merely an agreement for alimony. Depending upon the answer to this question, the remarriage of the plaintiff either fails to affect, or terminates, the installment payments falling due subsequent to remarriage.

 Both parties agree that the law of California, where this contract was made, should govern our deliberations. That law applicable to this case is substantially the same as in Illinois, the general rule being that remarriage of the wife affords grounds for cancellation of all alimony payments not accrued at the time of the remarriage, but has no effect on continuing obligations created under a property settlement agreement made part of a divorce decree. *Cohen v. Cohen,* 150 Cal. 99, 88 Pac. 267; *Atlass v. Atlass,* 112 Cal. App. 514, 297 Pac. 53; *Parker v. Parker,* 203 Cal. 787, 266 Pac. 283; *McClure v. McClure,* 4 Cal. (2d) 356, 49 P. (2d) 584; *Codorniz v. Codorniz,* 34 Cal. (2d) 811, 215 P.(2d) 32; *Hough v. Hough,* 26 Cal. (2d) 605, 160 P.(2d) 15; *Walters v. Walters,* 341 Ill. App. 561, affirmed 409 Ill. 298; *Stromsem v. Stromsem,* 344 Ill. App. 530.

The pertinent provisions of the agreement in the instant case are as follows:

82

"Whereas, the parties hereto are desirous of making a full, complete and final settlement and adjustment of their respective property rights in and to all property, both separate and community, now owned by them, or which may be acquired hereafter by them, providing for the support and maintenance of the party of the second part, and providing for the custody of said minor child during her minority;

"Now, Therefore, in consideration of the premises and of the mutual covenants herein contained, it is agreed as follows, to-wit:

"1. [Paragraph 1 disposes of household effects and life insurance policies, the indicated value of which is $5,000.]

"* * *

"4. As and for the support and maintenance of the party of the second part, party of the first part agrees to pay party of the second part the sum of Twenty-Five Thousand ($25,000.00) Dollars cash, lawful money of the United States, as follows:

"One Thousand ($1,000.00) Dollars thereof on the execution hereof, receipt whereof being acknowledged;

"One Hundred and Fifty ($150.00) Dollars on account thereof during December, 1940, and a like sum of One Hundred and Fifty Dollars each and every month thereafter until said total sum of $25,000 has been paid in full without interest. Any and all payments received by party of the second part as contingent beneficiary under said insurance policies, as aforesaid, shall be payments pro tanto on account of the last maturing installments payable hereunder, as aforesaid.

"5. The parties hereto, and each of them, do hereby waive and relinquish and surrender any and all claims and rights to inheritance from the other * * * and each party hereby releases and relinquishes to the other party * * * all claims, demands, right to

83

family allowance, homestead and interests against, in or to the estate of the other upon the death of the other, save and except the covenants of Paragraph 4 hereof shall be binding upon the estate of party of the first part.

"6. The parties hereto have hereby settled and adjusted by and between themselves all present and future property rights and earnings of every kind or nature, whether community or separate property wheresoever the same is, or may be located, and all other rights and claims which either may have, or claim to have, against the other insofar as their property rights are concerned; and, in addition thereto, the parties hereto do hereby settle and adjust, and have settled and adjusted, and forever determined all their respective rights to, of and in any inheritance of either from the other respectively.

"* * *

"9. This agreement shall be binding on the parties hereto, their heirs, executors and administrators; provided, however, should party of the second part die prior to the completion of payments hereunder her death shall discharge party of the first part from further payments hereunder, save and except installments due and unpaid at the time of her death."

Both parties base their contentions upon the language of the above agreement in the light of the interpretations given similar language under analogous circumstances by California authorities. The defendant contends that the agreement is a divisible one, part of which is a property settlement, and part of which is periodic alimony. Plaintiff maintains that the agreement must be viewed as a whole, and so considered the agreement indicates an intention between the parties to enter into a complete and final disposition of all rights in each other's property, one of the considera-

84

tions for which is the agreement on the part of the defendant to pay the plaintiff the sum of $25,000, partly payable in deferred monthly payments. This interpretation, it is maintained, is fortified by the testimony given by the wife on the hearing before the Illinois court.

Defendant refers with emphasis to the portions of the preamble and the agreement which refer to the agreement to pay $25,000 as being "for the support and maintenance of the party of the second part." He argues that such characterization indicates that the parties intended it to be alimony. In this connection we are impressed by the case of *Puckett v. Puckett*, 21 Cal. (2d) 833, where a similar decree was under consideration and similar language analyzed. In that case the court reasoned as follows (p. 841):

"If the divorce decree together with the agreement upon which it is based may be considered to be an adjustment of property rights only, or what is commonly referred to as a property settlement, it follows that there is in effect no provision in the divorce decree for alimony strictly defined, *even though periodic payments must be made. The periodic payments are not alimony.* They are a part of a property settlement. Where no provision for permanent alimony is made in a divorce decree, or the provision therein made is limited as to time, or the occurrence of certain events, and the court does not reserve the power, the court may not subsequently modify the decree to grant permanent alimony or alter the limitation imposed." (Italics ours.)

In other words the court says that because a part of the gross sum agreed upon is to be paid in installments such arrangement does not necessarily make the provision for such payment an alimony provision.

We reached the same conclusion in *Walters v. Walters*, 341 Ill. App. 561, 571 (affirmed 409 Ill. 298):

"That the award may be payable in instalments is not determinative of the question as to whether it is gross alimony or periodic alimony. Gross alimony may be payable in instalments—whether all cash or all or partly on credit does not affect the essential nature of the transaction. *The principle involved is that gross alimony becomes a vested right from the date of the rendition of the judgment, and the manner of its payment in no wise affects its nature or effect.* It would be a harsh rule that would deprive parties of the right to make final property settlements merely because the one furnishing the money was unable to meet the entire obligation in one payment. It would favor the affluent over the one less fortuitously circumstanced."

In the *Puckett* case the provision for monthly payments was very similar to that in the instant case, the provision being "for the support and maintenance of the wife, and for the support and maintenance of the minor child," and the husband agreed to pay $250 per month. It was held, considering the decree as a whole, that it was a property settlement rather than alimony.

In the case under consideration the property agreement which became a part of the decree was introduced in evidence. In the preamble it was recited that the parties were desirous of making a full, complete and final adjustment of their respective property rights in and to all property owned by them and providing for the support and maintenance of the party of the second part and for the custody of the minor child. Under clause four the defendant agrees to pay the sum of $25,000, $1,000 in cash and the balance in installments of $150 a month. It would appear that this was a firm undertaking to pay a gross sum as one of

86

the considerations of the property settlement. This conclusion seems to be fortified by the further provisions of the agreement to the effect that the parties "have hereby settled and adjusted by and between themselves all present and future property rights and earnings of every kind or nature, whether community or separate property * * * and in addition * * * settle and adjust * * * all their respective rights to * * * any inheritance of the other." Nowhere in the agreement is the word "alimony" used, and, although it would not be conclusive if it were, it would be an indicium of intention.

In the case of *Ettlinger v. Ettlinger*, 3 Cal. (2d) 172, where there was an agreement that "the property rights of the parties hereto respectively shall be finally adjusted, settled and determined," the decree, referring to this agreement, provided:

" 'It is further ordered, adjudged and decreed that that certain agreement for the settlement of the property rights of the parties hereto, a copy of which is attached hereto and marked "Exhibit A" * * * be, and the same is, hereby ratified, approved and confirmed.

" 'And it is further ordered, adjudged and decreed that in pursuance of the aforementioned agreement the plaintiff do have and recover from the defendant the sum of Two hundred fifty ($250.00) dollars per month commencing with the month of April, 1929, and payable on the first day of each and every month until the death or remarriage of the plaintiff.' "

Later it was sought to modify this portion of the decree by reducing the payments from $250 to $175 per month, defendant taking the position that the provision was for alimony and not by way of property settlement. The court, after analyzing the decree, which was

similar to the one here being considered, disagreed with defendant's contentions, saying:

"Under the ninth clause of the agreement the plaintiff agrees and acknowledges 'that the property hereinbefore described and referred to and the *monies* to be paid . . . and the said monthly payments as aforesaid so to be paid to her . . . is and are in full satisfaction and settlement of all claims and rights to property of every kind and nature which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party or his estate whether at law or in equity or probate and also in full settlement of all claims to community property which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party or his property and *also as full provision for her support and maintenance* and in full settlement of all claims which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party *for alimony,* award, expense money, costs or counsel fees, in any action for divorce or separate maintenance, or any other litigation which may hereafter arise between the parties hereto and the said first party hereby accepts the said property and money as aforesaid in full and final settlement of all present or future possible claims which said first party might now or hereafter make or have or could now or hereafter make or have or otherwise assert against the party of the second part or against the property of the second party whether real, personal or mixed, and wheresoever the same may be or held, of whatsoever kind or nature, * * *'

"We are satisfied from an examination of the entire agreement, having particular reference to the above-quoted provisions thereof, that it was the intention of the parties to definitely, fully and permanently adjust

and settle all of their property rights. The agreement indicates that the monthly payments to be made thereunder by defendant to plaintiff, stated to be for the latter's 'support and maintenance,' constituted an integral and important element in the amicable adjustment and liquidation of such property rights. In our opinion, the contract suggests that such payments were to be made to and received by plaintiff as part of the property settlement and in lieu of property rights.'' (Italics ours.)

The court in that case was impressed with the fact that the parties were attempting to definitely, fully and permanently adjust and settle all their property rights. The agreement in the instant case may not be read without concluding that the intention of the parties here was the same. It specifically so recites. Notwithstanding the fact that there is reference in the agreement to support money, we are convinced that the payment of $25,000 in installments was consideration for a property settlement which was to be in lieu not only of the plaintiff's right to support but all other claims to any interest in defendant's property or estate.

Defendant urges that clause nine of the agreement discharging defendant from any installment payments accruing after the death of the wife indicates that the support provisions did not become vested at the time of making the agreement and indicates an intention that they were to be considered as periodic alimony. We disagree that any such intention is manifest in this clause. On the contrary it is a reasonable inference that if the parties intended that remarriage as well as death were to terminate installment payments they would have so provided in this clause. Our conclusion in this respect is further supported by plaintiff's undisputed testimony at the hearing before the court in the instant case as follows:

"Q. You mean you wanted him to pay $150.00 a month so that you could live in New York?

"A. Definitely not. I made it clear. I told him I didn't want to live that way, that it was disgusting, and I thought the best thing to do was to have a divorce and I would go to work, which I figured I would do. I did have that $25,000 which he agreed to, and I agreed to take it in amounts of $150.00 a month, which was satisfactory to me, because I intended to go to work anyway. * * * I told my husband I wanted that [$25,000] as a settlement long before he went to California. * * * As to whether I had a talk with him shortly before this agreement was signed, about that $25,000 * * * Mr. Maybaum wanted to pay me $250.00 for the rest of my life. I didn't want to take money from him for the rest of my life. I just wanted to make a new start and live my life. He offered to support me for the rest of my life if I would go there."

It would appear from this testimony, which is undisputed, that she had refused an offer of alimony of $250 a month, insisting upon $25,000 as a property settlement, a portion of which was accepted in installments of $150 a month.

Defendant relies strongly upon the case of *Hough v. Hough*, 26 Cal.(2d) 605, 160 P.(2d) 15, where the settlement agreement provided that defendant would pay plaintiff $35,000 as a community property settlement and would also pay the plaintiff $200 a month for her support "during her life unless she remarries" and "if she remarries said monthly payments would cease." Later there was an application for a change in the support payments on the ground of change of financial circumstances, which was granted. We fail to see the similarity of the two cases, for in the *Hough* case the agreement specifically provided that the $200 per month payments were to cease in the event of re-

marriage. There is no such provision in the decree under consideration.

■ Complaint is made that the trial court unduly restricted the right of the defendant on the hearing here to show all the surrounding circumstances under which the property settlement agreement was executed, for the purpose of showing the intent of the parties. Inasmuch as no offer of proof was made there is nothing before us to indicate what testimony bearing on this subject would have been adduced, and there is therefore nothing for us to review.

■■ Defendant cites a number of California cases in some of which it has been held that the agreements there analyzed constituted agreements for the payment of alimony. These cases, of course, are not particularly helpful because each depends upon the particular agreement under consideration. In the instant case the court construed the agreement here involved as a property settlement agreement and not as a periodic alimony agreement. We feel that the construction placed upon the agreement by the court is not against the manifest weight of the evidence. The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

ROBSON, P. J. and SCHWARTZ, J., concur.