ALICE A. RICHHEIMER, Plaintiff-Appellant, *v.* ROBERT G. RICHHEIMER, Defendant-Appellee.

(No. 56906;

First District—December 15, 1972.

Albert E. Jenner, Jr., Robert E. Pfaff, and Stephen C. Myers, all of Chicago, (Arthur Morse, of counsel,) for appellant.

Stiefel, Levinson & Komie, of Chicago, (Charles W. Stiefel, Jr., of counsel,) for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This appeal is taken from an order which modified a divorce decree by terminating all monetary payments to plaintiff except those for child support. The trial court's order also denied plaintiff's motion for leave to file both a supplemental answer to defendant's petition and her counterclaim for reformation of the decree. The several issues raised on appeal essentially question whether the trial court was correct in ruling that the payments to plaintiff under the divorce decree constituted periodic alimony which terminated upon her remarriage. Error is also

claimed because of the court's refusal to hold an evidentiary hearing to determine the actual intent of the parties in relation to their agreement pertaining to the monetary payments.

Plaintiff had obtained a decree of separate maintenance from defendant in 1963, and thereafter, sued for divorce. The parties entered into a written agreement, dated November 10, 1967, which was later incorporated into the divorce decree of December 7, 1967. The agreement provided that plaintiff was to receive 50% of defendant's income for life, with various provisions for adjustments to the actual amount of payment. It was further agreed that the monthly payments would not be reduced by plaintiff's remarriage until the passage of 121 months from the date of the agreement. Payments were to be $2,510.42 per month during the first 24 months after the divorce and $2,093.75 per month thereafter. Plaintiff's remarriage after the expiration of the 121 month period would result in the reduction of monthly payments by $900.00 per month.

The settlement agreement is a lengthy and complex instrument for the distribution of the family assets. A collateral agreement is attached which places stock owned by the defendant in escrow to secure his performance of the multiple terms of the agreement. In addition to the monthly payments, plaintiff was to receive an immediate payment of $8,000 for alimony and child support. An additional $27,500 was to go to plaintiff for settlement of her claims for property rights and attorney's fees. As noted above, the agreement sets out a formula for the specific amount of money payable to plaintiff. The home of the parties and its furnishings were to be conveyed to plaintiff.

The agreement also contained a clause which provided for the complete execution and payment of the monetary provisions during the initial 121 month period. This was to be accomplished by a clause inserted in an irrevocable will which defendant agreed to execute. This clause was to direct defendant's executor to pay to plaintiff the remaining balance of the sum of monthly payments due for the initial 121 months of the divorce.

The case at bar resulted from plaintiff's remarriage on February 1, 1970. Defendant continued to make monthly payments to plaintiff for the next 14 months. Then on March 31, 1971, he filed a petition to modify the divorce decree to end all monthly payments except child support. Defendant's petition sought modification of the decree to terminate alimony payments because of plaintiff's remarriage pursuant to Ill. Rev. Stat. 1969, ch. 40, par. 19. This statutory provision reads in pertinent part:

> "A party shall not be entitled to alimony and maintenance after remarriage; but, regardless of remarriage by such party or death

of either party, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree."

During the course of this litigation, plaintiff sought leave to file a supplemental answer which included a prayer that the court hold a hearing to determine the true intent of the parties in drafting and executing the settlement agreement. Plaintiff urged that it had been agreed that the monthly payments were intended by the parties to be part of a lump sum property settlement.

The trial court denied plaintiff's motion for leave to file a supplemental answer which also incorporated a counterclaim for reformation of the decree. An order was entered modifying the divorce decree by terminating all payments except those for child support. This appeal is taken from that order.

The primary and controlling question is whether the matrimonial agreement constituted a property settlement or whether the financial arrangements constituted alimony. The trial court's reliance on the language of the instrument in ruling that the payments to plaintiff were alimony is assigned as error. Plaintiff argues that the trial court should have heard parol evidence of the extensive negotiations surrounding the agreement to determine the true intention of the parties. It is urged that such evidence would show that the agreement was a lump sum property settlement and that the monthly payments constituted a part of such settlement.

■■■ If the monthly payments are periodic alimony, the agreement cannot be enforced despite the specific provisions in the agreement that payments will continue despite plaintiff's remarriage. (*Balasa v. Balasa* (1956), 11 Ill.App.2d 103, 107-109, 136 N.E.2d 594, 596-597.) Therefore, we turn to an examination of the agreement to determine if the payments were periodic alimony. In this regard, we take particular note of the recent case of *Sudler v. Sudler* (1972), 6 Ill.App.3d 546, 286 N.E.2d 113. In that case, as in the instant case, the agreement contained a provision that the remarriage of the wife would not terminate periodic payments from the husband. The court found that the language of the property settlement contained language characteristic of both a lump sum agreement and periodic alimony. In such a case, where the language was ambiguous as to whether or not the wife was receiving periodic alimony, the court held that parol evidence was admissible to determine the original and true intention of the parties to the agreement. The court stated at 6 Ill.App.3d 548-549, 286 N.E.2d 114:

> "In interpreting the provisions of a divorce decree, the court seeks to give effect to the intentions of the parties, and the normal rules

pertaining to the construction of contracts are applicable. (*Brandel v. Brandel* (1966), 69 Ill.App.2d 264, 267, 216 N.E.2d 21; *Vinci v. Vinci* (1970), 131 Ill.App.2d 496, 266 N.E.2d 379, 382.) Thus, the parties' intentions must be determined from the language of the instrument itself, unless the instrument is incomplete or the language is ambiguous, in which case extrinsic evidence may be introduced as an aid to interpretation. (*Weiland Tool & Mfg. Co. v. Whitney* (1969), 44 Ill.2d 105, 114, 251 N.E.2d 242; *Wilson v. Resolute Insurance Company* (1971), 132 Ill.App.2d 174, 267 N.E.2d 720, 723.) An instrument is ambiguous if the words used by the parties are fairly susceptible of being understood in more than one sense. *La Salle Nat. Ins. Co. v. Executive Auto Leasing* (1970), 121 Ill.App.2d 430, 435, 257 N.E.2d 508; *First Nat. Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App.2d 335, 341, 260 N.E.2d 99.

This agreement contains some characteristics of periodic alimony, but also language commonly identified with a lump sum settlement."

We accept these principles to be sound and appropriate in a case where a settlement agreement lends itself to ambiguous interpretations. Where an ambiguity exists, the substance of an instrument, rather than the form, must control. In other words, the use of the word "alimony" is not conclusive. The language of the entire agreement must be examined to determine whether the financial arrangements set out therein are alimony payments.

■■ Turning to the agreement in the case at bar, it is indisputable that the monthly payments are referred to as "alimony" in paragraph 3 of the agreement. Another indication that periodic alimony was contemplated is found in paragraph 5 of the agreement which states that the parties understand that the monthly payments will be "periodic payments in discharge of a legal obligation * * *." Such references fall within the spirit of the rule that the use of the word "alimony" in an agreement incorporated in a divorce decree, while not conclusive as to whether the agreement was a property settlement or one for alimony, would certainly be an "indicium of intention" that periodic alimony was contemplated. *Maybaum v. Maybaum* (1952), 349 Ill.App. 80, 87, 110 N.E.2d 78, 81.

Defendant argues that there is a further indication that the monthly payments characterized periodic alimony by pointing to the language in the agreement concerning the actual amount of payments. It is urged there is no requirement in the agreement for payment of a gross fixed sum. Since it has been held that "alimony in gross" (*i.e.*, a lump sum agreement) is always for a definite sum, and none exists herein, the pay-

ments must be construed as periodic alimony. To support this contention, defendant cites *Walters v. Walters* (1950), 341 Ill.App. 561, 94 N.E.2d 726, aff'd 409 Ill. 298, 99 N.E.2d 342. In that case, the court held that the phrase "alimony in gross" or "gross alimony" represents an award of a definite amount of money. The court stated at 341 Ill.App. 568, 94 N.E.2d 729:

> "On the other hand, the phrase 'alimony in gross' or 'gross alimony' is always for a definite amount of money; the payment is always for a definite length of time; it is always a charge upon the husband's estate and has uniformly been held by our courts to be not modifiable."

Plaintiff, on the other hand, counters this line of reasoning by arguing that the terms of the agreement provided plaintiff with a 121 month period of guaranteed payments, at a fixed sum, unaffected by her remarriage.

▪▪ In reviewing the above arguments by the parties, we are led to the conclusion that an ambiguity does exist. Although the agreement does contain characteristics of a periodic alimony set-up, there is also language in the agreement that points to a lump sum or gross agreement, particularly that which requires continuation of the payments if plaintiff were to remarry. The provision for payment of a fixed and certain sum to be paid for 121 months is susceptible to interpretation as a lump sum agreement. It is particularly significant that the payments during the initial 121 month period after the agreement are to be a charge against the husband's estate. By its very nature, alimony is limited to the life span of the husband. Where the balance of the payments are a charge against the estate of the husband in the event of his death, there is a strong inference that the payments were contemplated as part of a property settlement rather than as periodic alimony. In this regard, we note the language from the *Walters* case quoted above. Particular reference is made to the fact that the court held that a lump sum agreement "is always a charge on the husband's estate." *Walters v. Walters, supra.*

At best, the agreement is not clear and unambiguous. As the court in *Sudler* found, while conceding that elements of periodic alimony appeared on the face of the agreement "* * * the language of the agreement also has much of the flavor of a lump sum agreement." A parallel situation presents itself in this case. *Sudler v. Sudler* (1972), 6 Ill.App.3d 546, 549, 286 N.E.2d 113, 115.

▪▪ It is an established rule in this State that it is not necessarily the "label" placed upon payments by a divorce decree which establishes them as either alimony or lump sum settlements of property. Rather it is the elements inherent in the entire record in a case which determines

what the payments constitute. The intention of the parties and the nature of the transaction must be analyzed to determine whether a particular settlement was a property settlement or a contract for periodic alimony. (*Walters v. Walters* (1951), 409 Ill. 298, 302, 99 N.E.2d 342, 344.) In view of this rule and the principles set out in the recent decision of this Court in the *Sudler* case, we conclude that parol evidence is admissible to determine the true intention of the parties to the agreement.

■■ The trial court should have considered such evidence to establish *the true intention of the parties*. Its failure to do so in accordance with plaintiff's prayer in her motion to file a supplemental answer was error. Accordingly, the order of the lower court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.