**Theodore F. MELICHAR, 76–00921–G**

v.

**Betty Jane OST (015).**

**Civ. No. K–77–391.**

United States District Court,
D. Maryland.

Dec. 16, 1977.

Charles C. Bowie, Rockville, Md., for appellant.

Bert W. Kapinus, Mount Ranier, Md., for appellee.

KAUFMAN, District Judge.

This case involves the attempted discharge in bankruptcy of a payment provision in a marital settlement agreement.[1] The agreement was executed in Illinois in

---

1. Jurisdiction exists pursuant to 28 U.S.C. § 1334. As to the procedures to be followed and the standard of review to be followed with relation to the Bankruptcy Judge's determination, *see* Bankruptcy Rules 102, 801 and 810. The latter provides as follows:

    Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

1974 by defendant Melichar and plaintiff Ost (then Mrs. Melichar). The part of the marital settlement agreement from which the defendant-husband seeks discharge reads as follows:

> The husband further covenants and agrees that he shall pay to the wife as and for a lump sum settlement in lieu of alimony, the sum of SIXTY SIX THOUSAND FIVE HUNDRED FIFTY AND NO/100 ($66,550.00) DOLLARS, said sum to be payable at the rate of FIVE HUNDRED FIFTY AND NO/100 ($550.00) DOLLARS per month for a period of ONE HUNDRED TWENTY ONE (121) months, the first of said payments to be made simultaneously with the execution of this agreement by by [sic] both parties. It is further provided that the husband shall be liable for such monthly installment payments for a period of ONE HUNDRED EIGHT (108) months or nine (9) years, regardless of the remarriage of the wife. The parties further covenants [sic] and agree that after the expiration of the aforesaid ONE HUNDRED EIGHT (108) months or nine (9) year period, if the wife is already married or if the wife should remarry, the obligation of the husband for any future payments shall abate, however, the husband shall be liable for any past due unpaid installments then due and owing. In the event of the death of the husband or wife, at any time during the ONE HUNDRED TWENTY ONE (121) months, there shall be a one hundred percent (100%) abatement of the respective future installments due and owing to the wife pursuant to the provisions of this agreement.

That part of the contract is exclusively for the benefit of the wife, and contains the only undertaking by the husband relating to maintenance, support or alimony. Other paragraphs of the agreement provide for child support and property divisions.

The agreement was signed in April, 1974; the couple were divorced in Illinois in July, 1974. Plaintiff-wife remarried in August, 1974, becoming Mrs. Ost. In August, 1976, the defendant-husband instituted a bankruptcy proceeding in this Court, seeking *inter alia*, to be discharged from the above quoted obligations to plaintiff. The latter timely objected to such discharge. Both parties rely upon 11 U.S.C. § 35(a)(7):

> (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (7) are for alimony due or to become due, or for maintenance or support of a wife or child, or for seduction of an unmarried female or for breach of promise of marriage accompanied by seduction, or for criminal conversation; * * *.

Defendant-husband contends that the obligations in question constitute installment payments relating to a lump sum property settlement and are therefore dischargeable.

During the hearing on December 14, 1976 before the Bankruptcy Judge, defendant produced evidence that plaintiff had cohabited with her present husband (Mr. Ost) and had planned to marry the latter, prior to the signing of the agreement, and that the obligations in question in this case were bargained for by plaintiff and agreed to by defendant in order to make plaintiff financially comfortable in her contemplated new marriage. Plaintiff also testified during that hearing that prior to the consummation of the agreement she had planned to remarry soon after divorce, and that the obligations were contracted for by plaintiff and defendant with that consideration in mind.

On February 2, 1977, the Bankruptcy Judge filed the document appended hereto as Attachment A. Defendant, in his within appeal therefrom, challenges the finding below that the obligations were intended to cover "support and maintenance" [2] and con-

---

**2.** Defendant's primary position is as stated *supra* in the body of this opinion. Secondarily, however, he seems to question the Bankruptcy Judge's exclusion, early during the December 14, 1976 hearing, of testimony relating to plaintiff's cohabitation and her remarriage plans. However, the Bankruptcy Judge later allowed evidence, apparently unrefuted, as to plaintiff's cohabitation with plans for remarriage. Accordingly, no harm was done by its earlier exclusion even if that exclusion constituted error.

tends that debts relating to marital settlements are excepted from discharge only if they arise from a common law duty to support one's spouse.

The section 35(a)(7) exception was first inserted into the bankruptcy act in 1903. Just before that legislation was adopted, the Supreme Court dealt with the dischargeability of alimony obligations, and the like, in *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901). Subsequent to the 1903 legislation, the Supreme Court, in *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903), and in *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), considered the question of whether, in each case, an ex-husband's obligation to support his ex-wife was dischargeable in bankruptcy. The section 35(a)(7) exception had not yet become effective at the time of either ex-husband's bankruptcy. In *Wetmore*, the Court wrote (at 72–77, 25 S.Ct. at 174–176):

> In the case of *Audubon v. Shufeldt*, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009, 1010, Mr. Justice Gray, delivering the opinion of the court, said:

> "Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. * * "

> * * * * * *

> * * * We think the reasoning of the *Audubon case* recognizes the doctrine that a decree awarding alimony to the wife or children, or both, is not a debt which has been put in the form of a judgment, but is rather a legal means of enforcing the obligation of the husband and father to support and maintain his wife and children. He owes this duty, not because of any contractual obligation, or as a debt due from him to the wife, but because of the policy of the law which imposes the obligation upon the husband. The law interferes when the husband neglects or refuses to discharge this duty, and enforces it against him by means of legal proceedings.

> * * * * * *

> In the case of *Dunbar v. Dunbar*, decided by this court at the October term, 1902 (190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084), it was held that a contract made after divorce between husband and wife, by which the former agreed to pay the latter a certain sum of money annually for her support during her life, or so long as she remained unmarried, and also to pay a certain sum of money to her annually for the support of the minor children of the marriage, whose custody was awarded to the mother, was not discharged by a subsequent proceeding and discharge in bankruptcy. It was further held that the sum agreed to be paid for the support of the minor children was but a recognition of the liability of the father for their support, and that the fact that the annual instalments were made payable to the wife made no difference in the character of the obligation. Of this feature of the contract the court, speaking by Mr. Justice Peckham, said:

> "In relation to that part of the husband's contract to pay for the support of his minor children until they respectively become of age, we also think that it was not of a nature to be proved in bankruptcy. At common law, a father is bound to support his legitimate children, and the obligation continues during their minority. We may assume this obligation to exist in all the states. In this case the decree of the court provided that the children should remain in the custody of the wife, and the contract to contribute a certain sum yearly for the support of each child during his minority was simply a contract to do that which the law obliged him to do; that is, to support his minor children. . . . We think it was not the intention of Congress, in passing a bankruptcy act, to provide for

the release of the father from his obligation to support his children by his discharge in bankruptcy, and if not, then we see no reason why his contract to do that which the law obliged him to do should be discharged in that way. As his discharge would not in any event terminate his obligation to support his children during their minority, we see no reason why his written contract acknowledging such obligation and agreeing to pay a certain sum (which may be presumed to have been a reasonable one) in fulfilment thereof should be so discharged. It is true his promise is to pay to the mother; but on this branch of the contract it is for the purpose of supporting his two minor children, and he simply makes her his agent for that purpose."

We think this language is equally applicable to the present case in that aspect of the decree which provides for the support of the minor children. The obligation continues after the discharge in bankruptcy as well as before, and is no more than the duty devolved by the law upon the husband to support his children, and is not a debt in any just sense.

It is urged that the amendment of the law made by the act of February 5, 1903 [32 Stat. at L. 797, chap. 487], excepting from the operation of a discharge in bankruptcy a decree for alimony due or to become due, or for the maintenance and support of the wife and minor children, is a legislative recognition of the fact that, prior to the passage of the amendment, judgments for alimony would be discharged. In *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084, it was said that this amendment, while it did not apply to prior cases, may be referred to for the purpose of showing the legislative trend in the direction of not discharging an obligation of the bankrupt for the support and maintenance of wife and children. The amendment may also have been passed with a view to settling the law upon this subject, and to put at rest the controversies which had risen from the conflicting decisions of the courts, both state and Federal, upon

this question. Indeed, in view of the construction of the act in this court in *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009, it may be said to be merely declaratory of the true meaning and sense of the statute. *United States v. Freeman*, 3 How. 556, 11 L.Ed. 724; *Bailey v. Clark*, 21 Wall. 284, 288, 22 L.Ed. 651, 653; *Cope v. Cope*, 137 U.S. 682, 688, 11 S.Ct. 222, 34 L.Ed. 832, 834. The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes. Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children. While it is true in this case the obligation has become fixed by an unalterable decree so far as the amount to be contributed by the husband for the support is concerned, looking beneath the judgment for the foundation upon which it rests, we find it was not decreed for any debt of the bankrupt, but was only a means designed by the law for carrying into effect, and making available to the wife and children, the right which the law gives them as against the husband and father.

In *In re Adams*, 25 F.2d 640 (2d Cir. 1928), Judge Learned Hand applied the reasoning of *Wetmore* in a case factually similar to the present case. Adams involved a pre-divorce agreement which provided for

maintenance and support for the wife, until her remarriage or death. Subsequent to the signing of the agreement, the husband obtained a divorce on the grounds of his wife's adultery. Two years after obtaining the divorce the husband stopped payments, and several years later, while being sued by the wife's estate for arrearages, declared bankruptcy, seeking to be discharged of these payments. Judge Hand recognized that the husband would only be liable in bankruptcy for these payments if they were in discharge of his common law duty of support, and wrote as follows (at 642):

The question then arises whether they are dischargeable under section 17(a)(2) (11 U.S.C.A. § 35[2]) either as "liabilities" for "alimony" or "for maintenance or support of wife or child." That they are not liabilities for alimony appears not only because they were not granted by decree, but because in New York the guilty defendant is not entitled to alimony. *Waring v. Waring,* 100 N.Y. 570, 3 N.E. 289; *Palmer v. Palmer,* 1 Paige, 276 (semble); *Perry v. Perry,* 2 Barb. Ch. 311. On the other hand, it is plain that, so far as concerns any installments falling due before the divorce, they were certainly for the maintenance of the bankrupt's wife. However, all those in suit here fell due after the divorce, and consequently at a time when the appellant had no wife and could be under no duty to maintain or support one. Hence the appellant argues that they did not fall within section 17(a)(2), even though the contract was made while the marital duty existed and in part at least provided for its discharge.

This might be true if it appeared that the payments to be made before the divorce were reckoned as full compensation for the wife's right of support during that period, so that the remainder were left without any matrimonial foundation. We have, however, no reason to suppose that this was the case. The parties presumably acted with knowledge of their rights, and therefore of the fact that after a divorce the husband would be under no further marital duty whatever. Unless there were some abatement of the earlier payments in exchange for the later, these would have been a pure gratuity. Rather we think that the sum of all the payments, both before and after any divorce, was to be paid and accepted in full for that support and maintenance only which could be exacted by recourse to law. The fact that the parties chose to spread their payments over a period which might, if the suit proved successful, pass beyond the time when any such duty would exist presumptively affected their amount. Even so, those that fell due after the divorce did not lose their character as "liabilities for maintenance and support." They were similar to a provision in a separation settlement which might defer certain installments until after the death of the wife.

That this is not a factitious interpretation readily appears by considering the relations of the parties. Neither had any way of knowing whether the suit would succeed, what would be the limit of the husband's liabilities, if it did not, or, if it did, how long the wife might remain unmarried. It was by no means unnatural that they should decide to balance these two indeterminate aggregates against each other for the sake of ending their differences, relieving the husband for the present, and insuring the wife a continuance of support while she needed it. At least until some more positive evidence appears of an intention to go beyond the mutual legal rights of the parties, we have no reason to assume that they were actuated by motives of complaisance. It is true that in *Dunbar v. Dunbar* it was intimated that the reason why, if provable, such a debt would not be discharged, was that it might be regarded as in substitution for alimony, the wife being guilty of no "moral delinquency." While that cannot be the basis of our conclusion here, the case at bar is nevertheless distinguishable, because the settlement was there made only after the divorce and when therefore no marital duty any longer existed which it could liquidate.

And *see Norris v. Norris*, 324 F.2d 826 (9th Cir. 1963), in which the husband-bankrupt won a discharge from his obligation to make certain payments to his ex-wife. In that case, after the agreement had been made, the marriage was subsequently declared null and void, seemingly because the husband was married at the time of the "purported marriage." The Court wrote (at 828):

> It is well settled that "[a]limony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife," [*Audubon v. Shufeldt*, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901)] and it is the obligation based on this duty which is saved from discharge in bankruptcy by Section 17, sub. a(2) of the Act. *Wetmore v. Markoe*, 196 U.S. 68, 76, 25 S.Ct. 172, 49 L.Ed. 390 (1904).

The case at bar may be distinguishable from *Adams*, since there is evidence herein which could be relied upon to conclude that defendant's payments to plaintiff were intended to care for the wife's anticipated needs after her remarriage. If so, the post-remarriage obligations may not represent an undertaking by defendant in exchange for abatement of his pre-remarriage and/or pre-divorce undertakings. Thus, the entire $66,550 undertaking may represent a replacement for the husband's common law obligation of pre-divorce and/or pre-remarriage support. On the other hand, if that undertaking was intended primarily for the benefit of the wife in her new marriage, then it would not constitute a replacement of the husband's common law duty of support.

As stated *supra*, the agreement in question was executed in the State of Illinois. Illinois is also the state in which the parties were divorced.[3] Accordingly, this Court looks to the law of that state in order to determine the nature of the agreement.[4] The law of that state requires a recognition that the contractual provision in question contains elements of both a straight property settlement (dischargeable in bankruptcy) and of an alimony agreement (which, being based on the common law duty of support, is non-dischargeable). The discussion in *Richheimer v. Richheimer*, 9 Ill.App.3d 376, 292 N.E.2d 190, 193–94 (1972) is illuminating:

> If the monthly payments are periodic alimony, the agreement cannot be enforced despite the specific provisions in the agreement that payments will continue despite plaintiff's remarriage. *Balasa v. Balasa* (1956), 11 Ill.App.2d 103, 107–109, 136 N.E.2d 594, 596–597. Therefore, we turn to an examination of the agreement to determine if the payments were periodic alimony. In this regard, we take particular note of the recent case of *Sudler v. Sudler* (1972), 6 Ill.App.3d 546, 286 N.E.2d 113. In that case, as in the instant case, the agreement contained a provision that the remarriage of the wife would not terminate periodic payments from the husband. The court found that the language of the property settlement contained language characteristic of both a lump sum agreement and periodic alimony. In such a case, where the language was ambiguous as to whether or not the wife was receiving periodic alimony, the court held that parol evidence was admissible to determine the original and true intention of the parties to the agreement. The court stated at 6 Ill.App.3d 548–549, 286 N.E.2d 114:
>
> > In interpreting the provisions of a divorce decree, the court seeks to give effect to the intentions of the parties, and the normal rules pertaining to the construction of contracts are applicable. *Brandel v. Brandel*, 69 Ill.App.2d 264, 267, 216 N.E.2d 21 (1966); *Vinci v. Vin-*

---

3. *See* pages 1162–1163, *supra*.

4. *Matter of Cornish*, 529 F.2d 1363 (7th Cir. 1976) (applying Illinois law); *In re Nunnally*, 506 F.2d 1024 (5th Cir. 1975) (applying Texas law); *In re Waller*, 494 F.2d 447 (6th Cir. 1974) (applying Ohio law); *Damon v. Damon*, 283 F.2d 571 (1st Cir. 1960) (applying Maine law); *In re Adams, supra*, (applying New York law).

*ci*, 131 Ill.App.2d 496, 266 N.E.2d 379, 382 (1970). Thus, the parties' intentions must be determined from the language of the instrument itself, unless the instrument is incomplete or the language is ambiguous, in which case extrinsic evidence may be introduced as an aid to interpretation. *Weiland Tool & Mfg. Co. v. Whitney*, 44 Ill.2d 105, 114, 251 N.E.2d 242 (1969). *Wilson v. Resolute Insurance Company*, 132 Ill. App.2d 174, 267 N.E.2d 720, 723 (1971). An instrument is ambiguous if the words used by the parties are fairly susceptible of being understood in more than one sense. *LaSalle Nat. Ins. Co. v. Executive Auto Leasing*, 121 Ill. App.2d 430, 435, 257 N.E.2d 508 (1970); *First Nat. Bank v. Victor Comptometer Corp.*, 123 Ill.App.2d 335, 341, 260 N.E.2d 99 (1970).

This agreement contains some characteristics of periodic alimony, but also language commonly identified with a lump sum settlement.

We accept these principles to be sound and appropriate in a case where a settlement agreement lends itself to ambiguous interpretations. Where an ambiguity exists, the substance of an instrument, rather than the form, must control. In other words, the use of the word "alimony" is not conclusive. The language of the entire agreement must be examined to determine whether the financial arrangements set out therein are alimony payments.

Turning to the agreement in the case at bar, it is indisputable that the monthly payments are referred to as "alimony" in paragraph 3 of the agreement. Another indication that periodic alimony was contemplated is found in paragraph 5 of the agreement which states that the parties understand that the monthly payments will be "periodic payments in discharge of a legal obligation   .   .   .." Such references fall within the spirit of the rule that the use of the word "alimony" in an agreement incorporated in a divorce decree, while not conclusive as to whether the agreement was a property settlement or one for alimony, would certainly be an "indicium of intention" that periodic alimony was contemplated. *Maybaum v. Maybaum* (1952), 349 Ill.App. 80, 87, 110 N.E.2d 78, 81.

Defendant argues that there is a further indication that the monthly payments characterized periodic alimony by pointing to the language in the agreement concerning the actual amount of payments. It is urged there is no requirement in the agreement for payment of a gross fixed sum. Since it has been held that "alimony in gross" (*i. e.*, a lump sum agreement) is always for a definite sum, and none exists herein, the payments must be construed as periodic alimony. To support this contention, defendant cites *Walters v. Walters* (1950), 341 Ill.App. 561, 94 N.E.2d 726, aff'd 409 Ill. 298, 99 N.E.2d 342. In that case, the court held that the phrase "alimony in gross" or "gross alimony" represents an award of a definite amount of money. The court stated at 341 Ill.App. 568, 94 N.E.2d 729:

> On the other hand, the phrase "alimony in gross" or "gross alimony" is always for a definite amount of money; the payment is always for a definite length of time; it is always a charge upon the husband's estate and has uniformly been held by our courts to be not modifiable.

Plaintiff, on the other hand, counters this line of reasoning by arguing that the terms of the agreement provided plaintiff with a 121 month period of guaranteed payments, at a fixed sum, unaffected by her remarriage.

In reviewing the above arguments by the parties, we are led to the conclusion that an ambiguity does exist. Although the agreement does contain characteristics of a periodic alimony set-up, there is also language in the agreement that points to a lump sum or gross agreement, particularly that which requires continuation of the payments if plaintiff were to remarry. The provision for payment of a fixed and certain sum to be paid for 121

months is susceptible to interpretation as a lump sum agreement. It is particularly significant that the payments during the initial 121 month period after the agreement are to be a charge against the husband's estate. By its very nature, alimony is limited to the life span of the husband. Where the balance of the payments are a charge against the estate of the husband in the event of his death, there is a strong inference that the payments were contemplated as part of a property settlement rather than as periodic alimony. In this regard, we note the language from the *Walters* case quoted above. Particular reference is made to the fact that the court held that a lump sum agreement "is always a charge upon the husband's estate." *Walters v. Walters,* supra.

At best, the agreement is not clear and unambiguous. As the court in *Sudler* found, while conceding that elements of periodic alimony appeared on the face of the agreement ". . . the language of the agreement also has much of the flavor of a lump sum agreement." A parallel situation presents itself in this case. *Sudler v. Sudler* (1972), 6 Ill.App.3d 546, 549, 286 N.E.2d 113, 115.

It is an established rule in this State that it is not necessarily the "label placed upon payments by a divorce decree which establishes them as either alimony or lump sum settlements of property. Rather it is the elements inherent in the entire record in a case which determines what the payments constitute. The intention of the parties and the nature of the transaction must be analyzed to determine whether a particular settlement was a property settlement or a contract for periodic alimony. *Walters v. Walters* (1951), 409 Ill. 298, 302, 99 N.E.2d 342, 344. In view of this rule and the principles set out in the recent decision of this Court in the *Sudler* case, we conclude that parol evidence is admissible to determine the true intention of the parties to the agreement.

As was the agreement in the *Richheimer* case, the Melichar agreement is ambiguous, containing provisions suggestive of a property settlement (continuation of payments after remarriage; notation of a "fixed sum") as well as provisions suggestive of an alimony arrangement (termination of payments upon death of husband; premature termination possibility after 108 months). In this case, at this time, the intent of the parties is not revealed either within the four corners of the agreement in question, or from the parol evidence of the contracting parties adduced to date. Defendant-husband asserts that the $66,550 undertaking was not intended as a discharge of his common law duties, due to the impending marriage of plaintiff, because under Illinois law the right to alimony ceases upon remarriage. That argument, however, begs the question as to whether the $66,550 was intended to compensate plaintiff for the common law duty defendant owed to her. Additionally, defendant argues that, because of his former wife's infidelity, she would have been unable to collect any alimony upon divorce. But that argument overlooks the husband's seeming infidelity, admitted by him during the December 14, 1976 hearing, and the apparent availability of recrimination as a defense to an adultery divorce action in Illinois. *See Haring v. Haring,* 125 Ill.App.2d 116, 260 N.E.2d 396, 399 (1970), in which the Court wrote:

Defendant's defense of recrimination, affirmatively pleaded, if proved, would have barred plaintiff's divorce. The defense of recrimination has been repeatedly recognized by the courts of this State. As was stated in *Elston v. Elston,* 344 Ill.App. 233, 100 N.E.2d 635, 639 (2nd Dist. 1951), " 'Under such circumstances the rule long ago announced in *Duberstein v. Duberstein,* 171 Ill. 133, 49 N.E. 316, 320 [1898], is clearly applicable here. As in that case, the defendant asserted recrimination in defense of plaintiff's charges and thus we repeat: "Divorce is a remedy provided for an innocent party * * *; so that, when each party has committed a cause for divorce, the causes being of the same statutory character,

neither can complain of the other. * * " * * *.'" *Levy v. Levy*, 388 Ill. 179, 57 N.E.2d 366, 370 (1944). Such an affirmative defense, however, must be proved by a preponderance of the evidence.

The Bankruptcy Judge may well have considered all of these factors in reaching his determination. He did write that the "[t]estimony of the parties indicates that the amount payable to the wife was to maintain her economic position and the Court concludes that it is in the nature of alimony . . ." But that statement is conclusory and more than a bit too bare. The Bankruptcy Judge is in a far better position than is this Court to determine the intentions of the parties in the light of the legal analyses set forth in this opinion. Accordingly, the within case will be remanded to the Bankruptcy Judge for further elucidation and clarification. Upon remand, the Bankruptcy Judge may conduct a further evidentiary hearing before he files his further opinion and judgment, if, but only if, he deems same appropriate.

Defendant-husband has not in this appeal contended that the section 35(a)(7) exception is constitutionally invalid as sex discrimination in favor of females and against males. Recently, a District Court has reached that conclusion. *In re Wasserman*, 46 U.S.L.W. 2073 (D.R.I. July 18, 1977). In the absence of any briefing or presentation by the parties, and in view of the fact that the determination upon remand by the Bankruptcy Judge may render unnecessary resolution of that constitutional issue, this Court expresses no view with regard thereto.

## ATTACHMENT A

## STATEMENT OF FACTS

The Plaintiff and the Defendant bankrupt were married in 1953 and had four children. They entered into a "Marital Settlement Agreement" on April 18, 1974 and were divorced June 17, 1974.

Paragraph 8 of the agreement, which was incorporated in the divorce decree in Illinois provides for payments by the bankrupt to the wife of "a lump sum settlement in lieu of alimony" of $66,550.00, payable in certain monthly installments.

The bankrupt testified that the money payable to the wife was to be used by her to maintain the same economic position as she had previously maintained during their marriage. The wife testified that the bankrupt conveyed the house, in which they resided, to her, upon which she was to continue making the mortgage payments and that she and the bankrupt budgeted her expenses and arrived at the amount of monthly installments to be paid to her, to enable her to support herself until she became settled.

## CONCLUSIONS OF LAW

The decisions are divided as to the construction of the word "alimony" in Section 17a(7) of the Act. A more reasonable view appears to be that the Bankruptcy Court should, as a court of equity, look behind the agreement, by the testimony of the parties, to determine for what purposes the payments were to be made. See *Remondino v. Remondino*, 41 Cal.App.2d 208, 106 P.2d 437 (1940), where the Court states that "if, upon a consideration of the entire transaction the Court determines that the purpose of the judgment for support money is to guarantee the economic safety of the wife by the husband, then his discharge in bankruptcy does not affect his liability under the judgment". The case of *In re Avery*, 6 Cir., 114 F.2d 768 held that the Court may appoint a Master to determine what portion of a judgment was for alimony and support and what portion was for property rights. *In re Sasseen*, CCH Dec. para. 64, 549, held that a Bill of Complaint should look into the merits of a divorce judgment. Payment by lump sum does not, alone, determine alimony, as stated in *Kadel v. Kadel*, 21 Ohio Misc. 232, 250 N.E.2d 420, where a lump sum payment for maintenance and support were considered in the nature of alimony. See also *Myhers v. Myhers*, 6 Cal.App.3d 855, 86 Cal.Rptr. 356, where it was held that even though the wife gave up some of the incidents of alimony in a property settle-

ment, does not mean that she relinquished her rights as to the nondischargeability of the debt as alimony.

Testimony of the parties indicates that the amount payable to the wife was to maintain her economic position and the Court concludes that it is in the nature of alimony and is nondischargeable pursuant to Section 17a(7) of the Act.